IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM ALLEN MEANS

               Plaintiff,

v.                                    CIVIL ACTION NO.   2:20-cv-00561

E.M. PETERSON, et al.,

               Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Dismiss filed by Defendants Peterson, Harvey, and the City of South Charleston. [ECF No. 10]. Parties have responded [ECF No. 12] and replied [ECF No. 14] and this Motion is ripe for decision. For the reasons set forth below, Defendants' Motion to Dismiss [ECF No. 10] is **GRANTED in part** and **DENIED in part.**

I.    **Background and Procedural History**

This case revolves around an incident between Plaintiff William Means and Defendants Corporal Peterson ("Defendant Peterson") and Patrolman Harvey ("Defendant Harvey") on May 2, 2020. At this stage of the proceedings, I accept Plaintiff's factual allegations as true. Plaintiff describes the interactions between him and Defendants in great detail.

Plaintiff was riding a motorcycle on State Route 119 when Defendant Peterson began following him without turning on his lights or siren. [ECF No. ¶¶ 7–8]. This pursuit lasted over 15 minutes before Defendant Peterson called for back-up and Defendant Harvey joined the pursuit. *Id.* at ¶ 9. It is disputed when, or even if,

Defendant Peterson ever turned on his sirens to initiate a traffic stop. At this stage of the litigation, I accept Plaintiff's allegation that Defendant Peterson never attempted to initiate a traffic stop with lights or sirens as true.

After the pursuit persisted for some time, Defendant Peterson's SUV struck the rear wheel tire of Plaintiff's motorcycle causing him to drive off the road and crash into a pond. *Id.* at ¶ 12. Defendants Peterson and Harvey then approached Plaintiff as he was lying in the pond unable to move. Defendant Harvey then used pepper spray on Plaintiff before pulling him out of the pond. *Id.* at ¶ 15.

While Plaintiff was lying on the side of the road, either Defendant Peterson or Defendant Harvey then "stomped down hard on [Plaintiff's] head." *Id.* at ¶ 17. As a result of the crash, Plaintiff's spinal cord was broken, and he remains paralyzed from the waist down. *Id.* at ¶ 14.

Plaintiff filed this Complaint on August 25, 2020, alleging five counts against defendants. In Count I, Plaintiff alleges negligence, gross negligence, and reckless disregard in the operation of a motor vehicle against Defendants Peterson and the City of South Charleston. *Id.* at ¶¶ 21–27. In Count II, Plaintiff alleges the use of excessive force in violation of the United States Constitution and the West Virginia Constitution against Defendants Peterson and Harvey. *Id.* at ¶¶ 28–34. In Count III, Plaintiff alleges a Section 1983 Claim against Defendant City of South Charleston. *Id.* at ¶¶ 35–38. In Count IV, Plaintiff requests injunctive relief requiring Defendant City of South Charleston to "provide for the video-recording of all police encounters with suspects and other civilians where there exists a potential for apprehension or misapprehension." *Id.* at ¶¶ at 39–41.

2

Defendants filed their Motion to Dismiss on September 30, 2020. [ECF No. 10]. Defendants' Motion argues (1) that Plaintiff is barred from recovery under West Virginia law because Plaintiff was injured during the commission of a felony, [ECF No. 11, at 6–7]; (2) that the City of South Charleston is entitled to absolute immunity under the West Virginia Tort Claims Act, *id.* at 7–9; (3) that Defendant Peterson is immune from negligence claims under the West Virginia Tort Claims Act, *id.* at 9–10; (4) that Plaintiff's State Constitutional Claims are barred by the Tort Claims Act, *id.* at 10–11; (5) that Defendants Peterson and Harvey are entitled to qualified immunity from Plaintiff's § 1983 claim, *id.* at 11–14; (6) that Plaintiff has failed to allege a widespread policy in its § 1983 claim against Defendant City of South Charleston, *id.* at 14–17; and (7) that this court lacks the authority to grant the requested injunctive relief, *id.* at 17–18.[1]

## II.   Legal Standard

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l*

---

[1] Defendants have also moved to dismiss any claim for punitive damages. I reserve judgment on that issue until a later stage in the litigation.

*Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III.   Discussion

### a.  Is Plaintiff barred from recovering by W. Va. Code § 55-7-13d?

Defendants argue that Plaintiff is barred from recovering by W. Va. Code § 55-7-13d because the events described in the Complaint occurred while or after Plaintiff committed the felony of "fleeing with reckless indifference in violation of W. Va. Code § 61-5-17(f)." [ECF No. 11, at 6]. In his response, Plaintiff argues that he did not commit the felony in question and that, because we must accept his well pleaded factual allegations as true, this request must be denied. [ECF No. 12, at 2]. In their reply, Defendants raise—for the first time—the argument that the case must be dismissed because it could result in conflicting civil and criminal judgments. [ECF No. 14, at 2]. Section 55-7-13d of the W. Va. Code provides:

> (c) In any civil action, a person . . . may not recover if: (1) Such damages arise out of the person's commission, attempted commission, or immediate flight from the commission or attempted commission of a felony; and (2) That the person's damages were suffered as a proximate result of the commission, attempted commission, or immediate flight from the commission or attempted commission of a felony.
> (d)The burden of alleging and proving the defense set forth in subsection (c) of this section shall be upon the person who seeks to assert such defense: *Provided*, That in any civil action in which a person has been convicted or pleaded guilty or no contest to a felony, the claim shall be dismissed if the court determines as a matter of law that the person's damages were suffered as proximate result of the felonious conduct to which the person pleaded guilty or no contest, or upon which the person was convicted.

W. Va. Code § 55-7-13d(c)–(d).

The felony alleged by Defendants is "fleeing with reckless indifference" as described in W. Va. Code § 61-5-17(f). "A person who intentionally flees or attempts to flee in a vehicle from a law-enforcement officer acting in his or her official capacity

5

after the officer has given a clear or audible signal directing the person to stop, and who operates the vehicle in a manner showing a reckless indifference to the safety of others, is guilty of a felony . . . ." W. Va. Code § 61-f-17(f).

While Plaintiff has been charged with this offense, there has been no conviction. And it is Defendants' burden to prove that Plaintiff was committing a felony and that the felony was the cause of his injuries. At this stage of the litigation, where I accept Plaintiff's allegations as true, I must accept his allegation that Defendant Peterson did not visually or audibly try to initiate a traffic stop and that therefore no felony was committed.

Because the argument of creating conflicting judgments under *Heck v. Humphrey*, 512 U.S. 477 (1994) is raised for the first time in Defendants' reply brief, I do not consider it now. *See Moss v. Experien Information Solutions, Inc.*, 3:16-cv-6213, 2017 WL 1128636, at *3 (S.D. W. Va. March 24, 2017).

Defendants' Motion to Dismiss on the grounds that Plaintiff is barred from recovery because his injuries were proximately caused by his committing a felony is **DENIED**.

### b.  Is the City of South Charleston absolutely immune from liability?

Defendants argue that Defendant City of South Charleston is entitled to absolute statutory immunity from Plaintiff's negligence claims under W. Va. Code § 29-12A-5(a)(5). Plaintiff argues that this Section does not protect the municipality from liability for "claims resulting from a law enforcement or police officer's non-emergency or careless use of his motor vehicle." [ECF No. 12, at 3].

6

"A political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a government or propriety function . . . ." W. Va. Code § 29-12A-4(c). But this provision is "subject to" immunity provisions elsewhere in the West Virginia Code.

Section 29-12A-5(a)(5) provides that a "political subdivision is immune from liability if a loss or claim results from . . . the method of providing police, law enforcement or fire protection."

The Supreme Court of Appeals of West Virginia has clarified that this Section creates absolute immunity for municipalities from claims of negligence by employees in furtherance of the method of providing police, law enforcement, or fire protection. *Albert v. City of Wheeling*, 238 W. Va. 129, 133 (2016) (holding that W. Va. Code § 29-12A-5(a) provides immunity "regardless of whether such loss or claim is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment); *Taylor v. Clay County Sheriff's Dep't*, 2:19-cv-00387, 2020 WL 890247 (S.D. W. Va. Feb. 24, 2020).

Plaintiff is correct that prior to the ruling by the Supreme Court of Appeals in *Albert*, this liability would not have been foreclosed under *Smith v. Burdette*, 566 S.E.2d 614 (W. Va. 2002), but the language of *Albert* is explicit. A municipality is not liable for damages that result from the negligence of a municipal employee when that negligence occurs in furtherance of providing police, law enforcement, or fire protection. *See Syl Pt.* 4, *Albert*, 238 W. Va. 129. Plaintiff has conceded that

Defendants Peterson and Harvey were acting within the scope of their employment, so no further analysis on this issue is required.

Defendants' Motion to Dismiss Plaintiff's negligence claim against Defendant City of South Charleston is **GRANTED.**

### c. Is Defendant Peterson immune from liability for a negligence claim?

Defendant Peterson alleges that he is not liable for ordinary negligence because a "political subdivision employee cannot be liable for negligence." [ECF No. 11, at 9–10]. Plaintiff concedes that Defendant Peterson is not liable for ordinary negligence. [EC No. 12, at 7]. Plaintiff preserves his claims that Defendant Peterson was reckless and or willful in striking Plaintiff's Motorcycle. [ECF No. 1, at ¶¶ 23, 25, 30]. *See Mandolidis v. Elkins Indus., Inc.*, 161 W. Va. 695 913–14 (W. Va. 1978) ("The law of this jurisdiction recognizes a distinction between negligence, including gross negligence, and wilful [sic], wanton, and reckless misconduct. The latter type of conduct requires a subjective realization of the risk of bodily injury created by the activity and as such does not constitute any form of negligence.") (superseded by statute on other grounds); *Weigle v. Pifer,* 139 F. Supp. 3d 760, 775 (S.D. W. Va. 2015) ("West Virginia 'permits a plaintiff who has asserted a Section 1983 claim against a law enforcement officer to pursue an independent claim for assault, battery or other common law intentional tort even if those claims arise from the same facts as the Section 1983 claim.'").

Defendants' Motion to Dismiss Plaintiff's negligence claim against Defendant Peterson is **GRANTED**.

### d. Are Plaintiff's West Virginia Constitutional Claims barred by the Tort Claims Act?

Defendants argue that Plaintiff's claims for damages under the West Virginia Constitution are barred by the Tort Claims Act. Plaintiff concedes that the Tort Claims Act does not waive immunity from suit for damages from violations of the West Virginia Constitution but argues that there is a judicially created cause of action for these claims. Plaintiff further states that all the allegations that Defendants are referring to as 'State Constitutional Claims' are being pursued against Defendants as claims of either willful, malicious, wanton or reckless conduct pursued under W. Va. Code § 29-12A-5(b)(2). [ECF No. 12].

Defendants are correct that immunity for state constitutional claims is covered by the Tort Claims Act. *See Bowden v. Monroe Cnty. Comm'n*, 232 W. Va. 47, 51 (2013). Section 29-12A-5(b)(2) of the Tort Claims Act provides that an "employee of a political subdivision is immune from liability unless . . . [h]is or her acts were with malicious purpose, in bad faith, or in a wanton or reckless manner." Because Defendants Peterson and Harvey's immunity from suit for allegations of malicious, wanton, or reckless conduct is waived by statute, I need not decide whether there is an additional cause of action for this same conduct for violating the West Virginia Constitution.

### e. Are Defendants Peterson and Harvey entitled to qualified immunity?

Defendants Peterson and Harvey argue that they are entitled to qualified immunity from Plaintiff's claims that Defendants Peterson and Harvey violated his constitutional rights. Defendants assert that Plaintiff has not demonstrated that

Defendant Peterson violated a clearly established law when Officer Peterson forced his motorcycle off the road or that Defendant Harvey violated a clearly established law by pepper spraying him while he was in the pond.[2]

Under the doctrine of qualified immunity, "[g]overnmental officials performing discretionary functions are shielded from liability for money damages so long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Thus, the court must undertake a two-part inquiry: (1) viewing the facts in the light most favorable to the Plaintiff, the court must determine if there was a constitutional violation; and (2) if so, whether the right violated was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). If the answer to either question is no, then the Defendants are entitled to qualified immunity. The Supreme Court previously required courts to address the first prong before the second. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). "In 2009, however, the Court held that judges 'should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (quoting *Pearson*, 555 U.S. at 236).

---

[2] Plaintiff notes that Defendants have not raised qualified immunity for Plaintiff's claim that either Defendant Peterson or Defendant Harvey "stomped" on his head.

### i. Was this an unreasonable seizure under the Fourth Amendment?

Plaintiff "alleges a violation of his rights under the Fourth Amendment, which "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures.'" *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting U.S. Const. amend. IV). The Fourth Amendment's bar on unreasonable seizures prohibits the use of excessive force by a police officer in effectuating an arrest. *Clem v. Corbeau*, 284 F.3d 543, 549–50 (4th Cir. 2002)." To determine whether an officer's use of force is excessive, we apply a "standard of objective reasonableness." *Id.* at 550. "We do not inquire into an officer's motives, intentions, or tendencies, and instead determine whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Id.* (citing *Elliot v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996).

Because the excessiveness turns on "the information possessed by the officer at the moment that force is employed," force justified at the beginning of an encounter is not justified if—even seconds later—that justification for the initial force has been eliminated. In *Brockington v. Boykins*, the Fourth Circuit held that the use of deadly force became objectively unreasonable once the suspect, disabled by the officer's initial use of deadly force fell to the ground, 637 F.3d 503, 507–08 (4th Cir. 2011).

Here, Plaintiff has alleged that Defendant Peterson followed him at an unsafe distance for fifteen minutes for no reason other than a suspicion that the motorcycle might be stolen. Defendant Peterson then willfully struck the rear of Plaintiff's motorcycle with his SUV, causing Plaintiff to crash into a drainage pond. The impact of the crash severed his spine. After Plaintiff had been knocked to the ground by the

11

initial use of deadly force, Defendant Harvey used pepper spray on Plaintiff while he was still incapacitated in the pond. Then, after pulling Plaintiff from the pond Defendant Harvey or Defendant Peterson proceeded to "stomp" on his head.[3]

Accepting Plaintiff's well pleaded factual allegations as true, which I am required to do at this stage of litigation, it is clear that the use of Defendant Peterson's SUV to run Plaintiff's motorcycle off the road was unreasonable and that the application of pepper spray by Defendant Harvey was unreasonable.

### ii.   Was this a violation of clearly established law?

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "When determining whether a right was 'clearly established,' '[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established.'" *Mack v. Turner*, No. 5:15-03589, 2016 WL 7840216, at *6 (S.D. W. Va. Dec. 13, 2016) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam)). "To be 'clearly established,' '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Though, of course, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Wilson v. Layne*, 526 U.S. 603, 620–21 (1999) (Stevens, J., dissenting).

---

[3] I, of course, recognize that Defendants Peterson and Harvey allege a noticeably different version of this story in their police reports and pleadings. Determining which version of this story is true is for a later stage of litigation.

There does not need to be a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "The salient question . . . is whether the state of the law . . . gave [Defendants] fair warning that their alleged conduct was unconstitutional." *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Thus, courts consider whether a right is clearly established "in light of the specific context of the case, not as a broad general proposition." *Adams*, 884 F.3d at 227 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

This requires me to decide whether it is clearly established under the law that police officers cannot, without any probable cause that a crime has been committed, without any belief that a suspect poses a danger to others, without any effort to initiate a traffic stop with lights or sirens, run a suspect off the road by striking a motorcycle with an SUV. I also must decide whether there is a clearly established right which provides that a police officer may not use pepper spray on a suspect who is lying unconscious and unmoving in a drainage pond. I then must decide whether it is a clearly established right which protects a suspect from a police officer "stomping" on his head while he is lying unconscious on the ground.

In *Brower v. County of Inyo*, the Supreme Court established that using a police vehicle to stop another vehicle by crashing into it is a seizure under the Fourth Amendment, 489 U.S. 593, 598 (1989) ("If . . . the police cruiser had pulled alongside

13

the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.") In *Tennessee v. Garner*, the Supreme Court stated that "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given," 471 U.S. 1, 11–12 (1985).

In *Scott v. Harris*, the Supreme Court examined the reasonableness of a police officer applying deadly force to end a high speed police chase that was putting many members of the public in danger and arrived at this rule: "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death," 550 U.S. 372, 386 (2007). In *Scott*, the necessity for using deadly force hinged on the key fact that the police officer applied deadly force to prevent serious harm to the officers or others during a "Hollywood-style car chase of the most frightening sort, placing police officers and innocent bystanders alike at great risk of serious injury." *Id.* at 379–381. The holding in *Scott* puts a law enforcement officer on notice that deadly force is not appropriate to seize a vehicle traveling at a slow speed that is not posing a danger to others.

Based on the law established by *Brower*, *Garner*, and *Scott*, and accepting the Plaintiff's alleged facts as true, I cannot find that any reasonable law enforcement officer would believe it to be lawful to apply deadly force to end a low-speed pursuit without having first attempted to initiate the stop via sirens. Defendants Peterson

14

and Harvey did not have probable cause to believe that Plaintiff was fleeing after committing a crime of violence. Plaintiff had not threatened Defendants Peterson and Harvey, or anyone else, with a weapon or threat of violence. Plaintiff was not traveling at a great rate of speed and was not putting anyone else on the road in danger. All of the factors that might have made Defendant Peterson's application of force to run the motorcycle of the road lawful were absent in this case, and it was clearly established at the time that an application of deadly force without one of these factors was unlawful.

I turn now to the use of pepper spray by Defendant Harvey and the "stomping" on his head that is corroborated by video evidence. In *Brockington v. Boykins*, the Fourth Circuit held that the use of deadly force became objectively unreasonable once the suspect, disabled by the officer's initial use of deadly force fell to the ground, 637 F.3d 503, 507–08 (4th Cir. 2011). Plaintiff has alleged that he was motionless in the pond after his spine was severed, when Defendant Harvey used pepper spray on him. Plaintiff alleged he was still unmoving when one of the Defendants "stomped" on his head. At the time of this incident, it was clearly established law that police officers could not use additional excessive force on a suspect who has already been incapacitated from an initial use of force.

If Plaintiff's version of events is accepted, as I must do at this stage, a trier of fact could easily conclude that a Fourth Amendment violation occurred and that reasonable officers in Defendants' position could not have believed that they were acting lawfully in employing deadly force. Defendants Peterson and Harvey are not entitled to qualified immunity at this point in the litigation.

15

Defendants' Motion to Dismiss Plaintiff's § 1983 claims against Defendants Peterson and Harvey is **DENIED**.

### f.   Is the Town of South Charleston immune from suit under § 1983?

Defendants argue that Plaintiff's § 1983 claim against Defendant City of South Charleston fails because Plaintiff did not allege a widespread policy but rather alleged only a single incident of misconduct. Plaintiff responds that the City's failure to require the use of body cameras and dashboard cameras amounts to a failure to supervise that encourages the violation of citizens' constitutional rights.

The theory of liability set forth in *Monell* provides for a § 1983 claim against local governments when their formal policies or customs result in constitutional deprivations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipal custom refers to relevant practices so widespread as to have the force of law, though not formally approved by a legislative body. *Bd. of the County. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997). A custom can include a municipality's failure to hire, train, supervise, and discipline its employees. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011); *Brown*, 520 U.S. at 415. Municipal liability under § 1983 cannot be based on a theory of respondeat superior. *Id.*; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989).

The municipality's failure to hire, train, supervise, or discipline must amount to deliberate indifference toward the constitutional rights at stake. *City of Canton, Ohio*, 489 U.S. at 379. Plaintiffs must demonstrate that the deliberate indifference *caused* the violation of their constitutional rights. *See id.* In this case, plaintiff alleges

16

supervisory liability against Defendant City of South Charleston. [ECF No. 1, at ¶¶ 35–38].

The Fourth Circuit has identified three elements in analyzing failure to supervise or discipline under *Monell*:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and
> (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). Demonstrating a "pervasive and unreasonable risk" requires evidence that the conduct is "widespread, or at least has been used on several different occasions." *Wilkins*, 751 F.3d at 226.

In this case, plaintiff has not pleaded specific facts that indicate that Defendants Peterson and Harvey, or even other South Charleston law enforcement officers, used unconstitutional excessive force on occasions other than May 2, 2020. Nor has he alleged that Defendant City of South Charleston knew about any other instances of Defendants using excessive force.

Defendants' Motion to Dismiss Plaintiff's § 1983 claim against Defendant City of South Charleston is **GRANTED.**

17

**g.  Does the court have jurisdiction to grant the injunctive relief requested?**

Defendants argue that Plaintiff's request for injunctive relief should fail for lack of a justiciable controversy. Plaintiff asserts that a justiciable controversy exists and that if I find that the policy of not requiring body or dashboard cameras is unconstitutional, then I must enjoin Defendant City of South Charleston, requiring them to use body and dashboard cameras whenever the apprehension of a suspect is possible. But first I will address whether Plaintiff has standing to pursue this claim.

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

The injury-in-fact requirement ensures that plaintiffs have a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks omitted). Because Plaintiff seeks declaratory and injunctive relief, he must establish an ongoing or future injury in fact. *O'Shea v. Littleton*, 414 U.S. 488, 495–96, (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

18

Plaintiff "must demonstrate 'a personal stake in the outcome,' showing that they have 'sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 220 (4th Cir. 2020) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983)). In *Lyons*, the plaintiff sought to enjoin the Los Angeles Police Department's use of chokeholds when an officer faces no threat of deadly force, 461 U.S. at 98. The plaintiff had previously been handcuffed and choked by a police officer during the course of a traffic stop, but the Court held that "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles." *Id.* at 111.

Like the request in *Lyons*, Plaintiff here seeks injunctive relief against Defendant City of South Charleston without having alleged multiple instances of misconduct based on a theory that a lack of body cameras and dashboard cameras encourages the use of excessive force by police officers. Therefore, I find that Plaintiff lacks standing to seek injunctive relief for the use of body and dashboard cameras.

Because Plaintiff lacks standing to pursue the requested injunctive relief, Defendants' Motion to Dismiss Plaintiff's claim for Injunctive and Declaratory relief is **GRANTED.**

## IV.   Conclusion

In summary, Defendants' Motion to Dismiss [ECF No. 10] is **DENIED in part** and **GRANTED in part**. Defendants' Motion to Dismiss Plaintiff's claim on the grounds that he was committing a felony is **DENIED**. Defendants' Motion to Dismiss the § 1983 claims against Defendants Harvey and Peterson is **DENIED.**

19

Defendants' Motion to Dismiss all negligence claims against the City of South Charleston is **GRANTED.** Defendants' Motion to Dismiss the negligence claim against Defendant Peterson is **GRANTED**. Defendants' Motion to Dismiss the § 1983 claim against Defendant City of South Charleston is **GRANTED**. Defendants' Motion to Dismiss Plaintiff's claim for Injunctive and Declaratory relief is **GRANTED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      November 13, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

20