IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON
Case No. 2:20-CV-11111

| | |
|---|---|
| **WILLIAM ALLEN MEANS,**<br>**Plaintiffs,**<br><br>v.<br><br>**E.M. PETERSON, D. HARVEY, and THE**<br>**CITY OF SOUTH CHARLESON,**<br>**Defendants.** | Expert Report<br>of<br>Roy G. Taylor, Ph.D. |

### Retention

My name is Dr. Roy G. Taylor, and I was retained by counsel for the Plaintiff to review the procedures used by the Defendants on May 2, 2020, which resulted in the permanent injury of Mr. William Means and to render my expert opinion as to whether the Defendants followed generally accepted law enforcement standards regarding high-speed vehicle chases.

### General Qualifications

I currently serve as the Chief of Police for Capitol Special Police and have been in this position since 2002 as well as the Chief of Police for Blue Ridge Public Safety since 2014. During my forty-year law enforcement career, I served as a Chief of Police in three North Carolina cities, the State's psychiatric hospital, and the National Geo-Spatial Intelligence Agency in the National Capitol Region. I have also served on the FBI's Joint Terrorism Task Force and several drug task forces during my career.

I also recently served as a National Guard MP Lieutenant Colonel, assigned as Provost Marshal, for Joint Task Force Civil-Support. In this role, I was the Chief Law Enforcement Officer for any military operations in the continental United States in the event of an enemy attack involving

chemical, biological, or nuclear devices.  Currently, I am a Lt. Colonel in the Army Reserve assigned as the Deputy Emergency Preparedness and Liaison Officer for North Carolina.

I currently serve as a Master's criminal justice program advisory board member for Meredith College in Raleigh, NC, and previously served as an adjunct faculty member in the criminal justice program at Wake Technical College located in Raleigh, North Carolina; and South-Eastern Community College located in Whiteville, North Carolina.

I hold several law enforcement certificates, including the Advanced Certificate from the State of North Carolina and Basic Certificates from Virginia, Maryland, and Ohio. I am currently certified by the North Carolina Criminal Justice Training and Standards Commission as a General Law Enforcement and Firearms Instructor.  I am also certified as a TASER Instructor and have been since 2005.  Between 1990 and 2004, I instructed in hundreds of Basic Law Enforcement Training Academies across the State of North Carolina, specializing in use of force, arrest procedures, high-risk traffic stops, physical fitness, hazardous materials, and first responder courses.

I completed my Ph.D. in Criminal Justice at Walden University and a master's degree at East Carolina University, Greenville, North Carolina, and a master's degree at Walden University, Minneapolis, Minnesota.  In addition, I completed my bachelor's degree at Mount Olive University, Mount Olive, North Carolina.

## Specific Qualifications to Provide Opinions on This Case

During my forty-year law enforcement career and my twenty-six years as a law enforcement executive and trainer, I have reviewed more than one hundred and fifty police-involved use of force cases.

I have trained thousands of law enforcement officers on the legal and professional standards regulating the use of motor vehicle chases, use of force, search, seizure, and arrest. My complete CV is attached as Appendix A to this report.

## Objectivity

My expert witness services have been approximately 60% plaintiffs and 40% defendants during the past five years. A list of this experience is attached as Appendix B to this report.

## Fees

My fee for the analysis, in this case, was a flat fee of $5,000.00 to write a report of opinions and prepare to testify at trial.

## Items Reviewed and Relied Upon In Development of Preliminary Opinions

Before developing my preliminary opinions in this case, I reviewed the materials listed in Appendix C attached to this report. The materials reviewed are of the type typically relied upon by consultants and experts when conducting an analysis of police-involved incidents and provided

me with enough relevant data to develop my preliminary opinions to a reasonable degree of professional certainty.

## Methodology Utilized In Developing Opinions

I have reviewed the U.S. Supreme Court decisions *Daubert v. Merrill Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and in *Kumho Tire Company v. Carmichael*, 526 U.S. 137, 147 119 S. Ct. 1167 (1999), which established the standards for scientific, non-scientific, technical and specialized knowledge expert witnesses. I understand that a non-scientific expert must be qualified to offer expert testimony by knowledge, skill, experience, training, or education. I have provided in this report both my general and specific qualifications I believe prove my qualifications to provide expert testimony in this case.

I also understand an expert's testimony must be relevant to the specific facts of an incident under consideration and be of such a specialized nature that it would be beyond the knowledge of a typical juror. An expert's testimony must also be of assistance to the jury in understanding the evidence and issues presented to them.  I believe my testimony regarding how officers are trained, professional standards for police response to vehicles that fail to stop, the protocols for police to seize subjects by force, as well as other practices, principles, and protocols recognized, relied upon, and employed in the law enforcement profession on the date of this incident are all areas of testimony which would assist the jury in understanding the evidence presented to them and is testimony relevant to the facts of this case.

Specifically, I possess knowledge regarding the standards and protocols recognized in the law enforcement profession on conducting high-speed and high-risk motor vehicle stops. I also have knowledge, training, and experience as an emergency medical technician and emergency first responder instructor teaching law enforcement officers about cervical spine and other injuries commonly found in victims of motor vehicle crashes.

These subjects are all matters beyond the knowledge of a typical juror and sufficiently tied to the facts of this case to be relevant and of assistance to the jury in understanding the evidence and resolving factual disputes.

The methodology used and conclusions reached by an expert must also be reliable. To ensure my methodology was reliable, I did not assign credibility to any witness, reviewed sufficient data to reach conclusions to a reasonable degree of professional certainty, developed a set of material and relevant facts only after a review of all materials provided, and assumed those facts to be true solely for the purpose of analysis. I then analyzed those facts against a backdrop of the professional standards for police practices, principles and protocols recognized, relied upon, and employed in the law enforcement profession on the date of this incident.

The methodology I used, in this case, is the same which I have utilized for several years and has been accepted by presiding judges in previous cases in which I have testified.   The methodology is consistent with the methods used by other experts in the field of law enforcement when conducting an analysis of police practices.

**Summary of Relevant and Material Facts Assumed To Be True For Purposes of Analysis**

The facts I assumed to be true for analysis purposes, in this case, are outlined in Appendix D attached to this report.  If asked to consider a different set of facts, I will analyze those facts and render opinions to the best of my ability.

**Opinions**

The basis and reasons for my opinions are premised upon my experience as a law enforcement officer; my education and training in law enforcement; my training and experience in conducting traffic law enforcement; my knowledge of law enforcement standards; my knowledge of law enforcement training and protocols for conducting high-speed chases of motor vehicles; and study of emergency first aid procedures through consulting professional literature; and the facts of this case as determined by a comprehensive review of the materials listed in Appendix C.

My preliminary opinions are based upon a synthesis of the above.  I hold the following opinions to a reasonable degree of professional certainty:

1.     The actions of Corporal Eric Peterson and Patrolman David Harvey of the South Charleston Police Department were not in accordance with generally accepted law enforcement training and well-established law enforcement standards regarding high-speed vehicle chases for minor motor vehicle infractions.

2.     On May 2, 2020, Mr. William Means was on his way to visit a friend who was going to give him a clutch cable for a motorcycle that Mr. Means was repairing.

3.     Mr. Means was driving a Honda CBR motorcycle that had been given to him by his aunt's boyfriend. The motorcycle had an expired West Virginia registration plate on it that Mr. Means said was on the bike when he received it. He acknowledged the license plate was not in his name, and it was expired.

4.     Corporal (CPL) Peterson was an on-duty law enforcement officer for the City of South Charleson, WV, and was operating a marked SUV.

5.     CPL Peterson had just picked up breakfast for himself and a maintenance garage employee at Chick-fil-a. He then stopped in the parking lot to speak to Stanley, a Metro Communications dispatcher.

6.     Upon leaving the parking lot, CPL Peterson noticed a motorcycle that had been spray-painted solid black. The motorcycle was stopped at the traffic light, waiting to turn onto Highway 119.[1]

7.     CPL Peterson caught up to the motorcycle at Hwy 119 and Southridge Blvd., South Charleston. He relayed the registration plate information to Metro Communications, and they responded that the license plate was for a 2009 Yamaha XT250 and was expired.[2] The

motorcycle was spray-painted with black primer, which CPL Peterson believed was common on motorcycles that may have been stolen or had their identity altered. He radioed this information to other units and requested they start towards his location on Hwy 119 to conduct a traffic stop of the motorcycle.

8.   CPL Peterson stated the motorcycle operator looked over his shoulder multiple times while at the red light, checking his position. Once the traffic light turned green the motorcycle continued southbound on US 119. CPL Peterson radioed the other units a description of the motorcycle operator and their location.[3]

9.   As the motorcycle approached the 73.6-mile marker, it moved to the left lane of travel, indicating that it may turn off US 119 and onto Ruth Rd.  CPL Peterson decided to initiate a traffic stop as the motorcycle turned onto Ruth Rd. He stated that he turned on the emergency lights and siren, providing a clear visual and audible signal for the motorcyclist to stop.[4]

10.   The operator looked over his shoulder and instead of stopping began to speed up. The motorcycle continued on Ruth Rd. to the intersection of Trace Fork Rd., where it turned onto Trace Fork Rd.[5]

11.   The motorcycle continued on Trace Fork Rd. at speeds ranging from 15 mph to a top speed of 53 mph. It then turned onto Heavenly Dr., where the posted speed limit is 25mph.[6]

12.   Lieutenant (Lt.) Paskel instructed CPL Peterson to "let him go if the speeds pickup or he starts to get reckless."[7] CPL Peterson acknowledged that radio message by responding, "copy Sir."[8]

13.   CPL Peterson reported that while negotiating both sharp and slight turns, he observed the motorcycle operator cross into the opposite lane of travel at high and low speeds, also putting his foot down on the pavement, seeming to indicate he was unsure of his or the motorcycle's abilities.[9]

14.   The motorcycle continued on Heavenly Dr., passing Elwood Dr., where it did not stop for a stop sign. The motorcycle then turned off Heavenly Dr. onto a dirt/gravel access road with multiple ruts and potholes.

15.   CPL Peterson testified that he did not operate his siren throughout the pursuit. He said that he turns it off so that he can be clear when talking on the radio. He also said that he has some hearing loss in his left ear from a shotgun being fired. So, it is difficult for him to hear.[10]

16.   The motorcycle operator slowed down due to the rough terrain and continued to look over his shoulder. He appeared to be trying to take off his backpack but was unsuccessful.[11]

17.   CPL Peterson wrote that he observed some parts of the motorcycle start to fall from the frame and hit the roadway due to the rough ride.[12]

18.   The motorcycle approached a creek bed with water flowing in it. The motorcycle speeds up, and the operator places his feet up in the air and traveled through the water. The motorcycle continued up a hillside and turned left onto Rabel Mountain Rd.

19.   CPL Peterson drove through the creek and continued to follow the motorcycle on Rabel Mountain Rd.

20.   Patrolman (Ptl) David Harvey was waiting at the intersection of Rabel Mountain Rd. and  Brounland Rd. and joined the pursuit behind CPL Peterson and took over radio communication for the pursuit.[13]

21.   The motorcycle failed to come to a complete stop as it turned left from Rabel Mountain Rd. onto Brounland Rd. It continued on Brounland Rd. past the Sand Plant road intersection and approached a section of roadway that was narrowed down to one lane due to road repair. The motorcycle failed to stop to alternate with oncoming traffic and proceeded directly through the coned-off area into the opposite direction of traffic.[14]

22.   The motorcycle continued to travel on Brounland Rd to the intersection with Emmons Rd. It turned right off of Brounland Rd. onto Emmons Rd. It continued on Emmons Rd. crossing over two sets of railroad tracks winding out a portion of roadway that was unlevel with multiple potholes. After two miles, the pursuit entered Boone County, WV.

23.   Metro Communications advised CPL Peterson that a WV State Police Trooper and Boone County Deputy Sheriff were both in the area to assist with the pursuit.[15]

24.   The motorcycle continued to travel on Emmons Rd. and accelerated, almost stricking a Dachshund in the roadway.[16]

25.   The motorcycle rounded a slightly elevated left-hand corner and failed to make the turn; it traveled up onto the Dartmont-Ashford railroad crossing. According to CPL Peterson, it struck the railroad tracks. The motorcycle spun as it hit the tracks, ejecting the motorcyclist off the seat, onto the railroad tracks, and into a ditch full of water. The motorcycle came to rest in the same ditch approximately ten to twelve feet away from the driver.[17]

26.   CPL Peterson stopped his police SUV on the railroad tracks and Ptl Harvey right behind him. Both officers observed Mr. Means lying on his back in the water and approached him with their pistols drawn. They gave him commands to bring his hands out so they could see them. According to CPL Peterson, Mr. Means brought them out momentarily but then put them back in the water.[18]

27.   The actions of these officers were observed and video recorded by Ms. Melissa Nunley, who was driving a yellow Jeep Wrangler and her passenger Ms. Mary Rich who was recording the officers.[19]

28.   CPL Peterson attempted to control Mr. Means' hands and got his left hand without seeing through the muddy water. Ptl Harvey tried to get a hold of the right hand. CPL Peterson slipped backward in the water and lost his grip. He said neither of them could see Mr. Means' hands nor know what he was doing with them under the water.[20]

29.   Ptl Harvey used his OC spray by shooting it into Mr. Means' face because he failed to make his hands visible. Mr. Means stated he thought he was drowning in the water, which CPL Peterson described as up to his knees.[21]

30.   Ms. Nunley stated that she could see the stream of "mace" coming out of the canister for several seconds.[22]

31.   Ms. Nunley testified that after Mr. Means was maced, the officers grabbed him by his wrists and drugged him across the railroad tracks.[23]

32.   Ms. Nunley and Ms. Rich also observed one of the officers, later identified as Ptl Harvey, stomp on Mr. Means head. This occurred while CPL Peterson went back to his patrol vehicle to radio for Fire and EMS support.[24] Ms. Rich captured this in her video recording.

33.   Ms. Nunley stated that after stomping on Mr. Means' head the officer rolled him over on his stomach and appeared to handcuff him behind his back.[25]

34.   Mr. Means stated he could not feel his legs and still felt as if he was drowning and requested his helmet be removed. CPL Peterson told him that the OC was probably adding to his issue and that they were not removing his helmet as it can help stabilize his neck/spine, and he had a clear airway as he was talking and breathing.[26]

35.   Based on their previous first aid training, both officers should have known that moving Mr. Means from the ditch by dragging him by his arms was improper and could cause further injury. They both should know that a person who is ejected during a motor vehicle crash may have cervical spine injuries. Moving them without stabilizing the head and neck may cause additional injuries. CPL Peterson testified that he was a former Emergency Medical Technician (EMT) and had worked on an ambulance.[27] Ptl Harvey testified that he had been a lifeguard and received first aid training to include caring for possible spinal injuries.[28]

36.   The decision to initiate a vehicular pursuit shall be based on the pursuing officer's conclusion that the immediate danger to the officer and the public created by initiating the pursuit is less than the immediate or potential danger to the public should the suspect remain at large.

37.   Corporal Peterson and Patrolman Harvey failed to comply with the South Charleston Police Department policies, which are consistent with generally accepted law enforcement practices. Specifically, they did not consider that the pursuit was dangerous to the driver of the

fleeing motorcycle, the residents of Kanawha County, other motorists, and themselves as compared to the danger posed to society by terminating the pursuit for a registration violation.

38.     In my opinion, as a police procedures expert, this pursuit should have been terminated soon after it started.  The pursuit traveled almost 19 miles through residential portions of the city at speeds over twice the speed limit. The initiating offense was operating a motorcycle with an expired registration plate. CPL Peterson was not aware of any dangerous or ongoing crime committed by the motorcyclist. CPL Peterson should have quickly recognized that the driver intended to elude him by the radical nature of his driving.

39.     Lt. Paskel, initially at 4 minutes and 40 seconds into the pursuit, instructed CPL Peterson to terminate the pursuit if the speed picks up or gets reckless. However, he failed in his responsibilities as the on-duty supervisor by not continuously checking during the following ten (10) minutes; the pursuit continued that it was not endangering the public.

40.     The International Association of Chiefs of Police model pursuit policy states that "pursuits should only be used if an officer has a reasonable belief that the suspect, if allowed to flee, would present a danger to human life or cause serious injury."[29]

41.     In general, pursuits for minor violations are discouraged. "The decision to initiate a pursuit must be based on the pursuing officer's conclusion that the immediate danger to the officer and the public created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large."[30]

42.     South Charleston Police Department Policy 23.0 provides the Emergency Response & Vehicular Pursuit polices for South Charleston police officers.  Section 23.1 provides that "…Irresponsible, careless and reckless driving are prohibited and will not be tolerated."

43.     23.8 provides, Discontinuance of Emergency Operation: Department members may not continue "emergency operation" when conditions escalate to a degree which places the safety of members or others in unreasonable jeopardy.  Conditions which must be evaluated continuously are:
- Capablities of the Member to control the situation
- Speed in relation to road and environmental conditions
- Degree of emergency, urgency, or threat to others.
- Traffic congestion.
- Proximity to schools, auditoriums, churches or other areas where pedestrians congregate.

44.     23.9 provides, Vehicle Pursuits. The following procedures are intended to reduce the hazards involved in vehicle pursuits while still assuring the apprehension of law violators.  In this regard, all Department Members will remain familiar with these procedures and abide by them.

45.      23.9.4 provides, Termination of Pursuit. The decision to pursue is not irreversible. Officers must continuously question whether the seriousness of the crime and other factors justify continuing the pursuit.  A vehicle pursuit shall be terminated under any of the following circumstances:

-   If in the opinion of the officer initiating the vehicle pursuit, the field supervisor, or the commanding officer, there is an unreasonable danger to the officer and/or other users of the highway created by the pursuit that outweighs the necessity for immediate apprehension. Factors which may indicate a pursuit should be terminated include, but are not limited to, speed which greatly exceeds the flow of traffic or when vehicular or pedestrian traffic congestion necessitates dangerous maneuvering which exceeds the performance capabilities of the vehicle or driver.
-   The suspects identity has been established to the point later apprehension can be accomplished, and there is no longer any need for immediate apprehension.
-   Whether the suspect is wanted only for misdemeanor or traffic violations and continued pursuit creates a recognized risk of collision or injury to any person.
-   The environmental conditions indicate the futility of continued hot pursuit.
-   The pursued vehicle's location is no longer known.
-   A supervisor orders the pursuit terminated.  The backup unit has a responsibility to recommend to the supervisor if the pursuit should be terminated.
-   If the involved officer cannot maintain continuous radio contact with Communications and supervisory personnel the pursuit shall be terminated unless absolutely compelling emergency circumstances exist.

46.      23.9.4 provides, Termination of Pursuit. The decision to pursue is not irreversible. Officers must continuously question whether the seriousness of the crime and other factors justify continuing the pursuit.  A vehicle pursuit shall be terminated under any of the following circumstances:

-   If in the opinion of the officer initiating the vehicle pursuit, the field supervisor, or the commanding officer, there is an unreasonable danger to the officer and/or other users of the highway created by the pursuit that outweighs the necessity for immediate apprehension. Factors which may indicate a pursuit should be terminated include, but are not limited to, speed which greatly exceeds the flow of traffic

or when vehicular or pedestrian traffic congestion necessitates dangerous maneuvering which exceeds the performance capabilities of the vehicle or driver.

- The suspects identity has been established to the point later apprehension can be accomplished, and there is no longer any need for immediate apprehension.

- Whether the suspect is wanted only for misdemeanor or traffic violations and continued pursuit creates a recognized risk of collision or injury to any person.

- The environmental conditions indicate the futility of continued hot pursuit.

- The pursued vehicle's location is no longer known.

- A supervisor orders the pursuit terminated.  The backup unit has a responsibility to recommend to the supervisor if the pursuit should be terminated.

- If the involved officer cannot maintain continuous radio contact with Communications and supervisory personnel the pursuit shall be terminated unless absolutely compelling emergency circumstances exist.

47.    South Charleston Police Department Policy 23.13 states that members should seriously consider discontinuance of pursuits with the persons being pursued have committed or is suspected of committing misdemeanor crimes or traffic offenses. Both CPL Peterson and Ptl Harvey testified that they were familiar with section 23 of the  policy manual.[31]

48.    A prudent officer deciding whether to initiate or continue a pursuit shall take the following into consideration:

a. The seriousness of the offense
b. Known information on the suspect
c. Road configuration (e.g. interstate, divided highway, work zone)
d. Physical location and population density (e.g. residential area, school zone, business district)
e. Existence of vehicular and pedestrian traffic
f. Lighting and visibility
g. Weather and environmental conditions
h. The relative performance capabilities of the pursuit vehicle and the vehicle being pursued
i. Officer training and experience
j. Available equipment
k. Speed and evasive tactics employed by the suspect
l. The presence of other persons in the police and suspect vehicle
m. Any other condition or situation that would create an unreasonable risk

10

49.     Supervisors are responsible for managing all vehicular pursuits to include determining whether the pursuit should continue or be terminated.[32]

50.     The supervisor is responsible for:

a. monitoring incoming information;
b. coordinating and directing activities as needed to ensure that proper procedures are used, to include:
(1) no more than the necessary number of units are involved,
(2) where available, aircraft has been requested,
(3) the appropriate radio channel is being utilized, and
(4) surrounding jurisdictions have been notified; and
(5) discontinuing the pursuit when necessary.

51.     CPL Peterson and Ptl Harvey had a duty to inform the supervising officer of the true speeds during the pursuit and to follow his instructions to terminate the pursuit as it became reckless and the speeds increased.

52.     Force is defined as the exercise of strength, energy, or power to impose one's will.  The use of force is either appropriate or inappropriate. The most common definition of appropriate force is that which is reasonably necessary to effect an arrest or overcome resistance. It is important to understand that appropriate force does not require the least amount of force but rather only a reasonable amount. Accordingly, there is also no requirement to begin with lesser force and gravitate to higher levels.

53.     Inappropriate force generally falls into two distinct categories: excessive force and unreasonable force. Excessive force is that which is deemed to be more severe than necessary in either kind or duration. Excessive force by kind inflicts more pain, suffering or injury than is deemed proper to accomplish the law enforcement objective. This almost always entails choosing the wrong weapon.  Excessive force by duration is when force is applied longer than is reasonable. Hitting a suspect with a baton may be necessary and reasonable, for example, but would be excessive when applied longer than is required to achieve the objective.  Unreasonable force is the use of any force when it is unjustified.  The most common mistake associated with complaints of unreasonable force is lack of urgency.  In such cases the situation simply did not merit the use of force at the time it was applied, even when it might have been called for eventually.

54.     Law enforcement officers are instructed in their basic law enforcement training on the use of force and that the U.S. Supreme Court ruled "All claims that law enforcement officers have used force – deadly or not – during an arrest, investigatory stop, or other seizure…will be analyzed under the Fourth Amendment reasonableness standard." [33]

55.     Since 1989 the standard established by the United States Supreme Court is *Graham v. Connor*, which has been used in basic law enforcement training programs to instruct officers on the use of force since that time. Officers are taught the Supreme Court stated, "The test of reasonableness requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Further, officers are instructed in use of force training programs that the Court stated "the question is…. whether the totality of the circumstances justifies a particular sort of seizure."

56.     Law enforcement officers are also taught when an officer's action is questioned following a use of force, that an assessment be made as to (1) whether the subject had an apparent ability/capability to carry out a threat; (2) whether the subject was able to use that ability/capability to carry out the threat; and (3) whether the subject, by words or deeds, demonstrated an intent to carry out the threat.

57.     In my expert opinion, on May 2, 2020 Corporal Peterson and Patrolman Harvey did not act according to generally accepted law enforcement standards in that they failed to continually reevaluate and assess the pursuit situation including all of the initiating factors and terminate the pursuit whenever it was obvious that the risks associated with continuing the pursuit were greater than the public safety benefit of making an immediate apprehension for minor traffic offenses.

58.     These officers used excessive force in arresting Mr. Means, who had no apparent capability to threaten the officers. Specifically, deploying OC spray in this manner constitutes excessive force, the manner in which Billy Means was extracted from the drainage ditch and dragged across the train tracks constitutes excessive force, the manner in which he was improperly rolled and cuffed constitutes excessive force, and the stomping of Mr. Means' head constitutes excessive force. These officers handled Mr. Means in a manner inconsistent with emergency first aid procedures for someone who may have suffered cervical spine injuries during a motor vehicle crash.  Because of these actions and failures of CPL Peterson and Ptl Harvey Mr. William Means was seriously and catastrophically injured.

Respectfully Submitted,

*Roy G. Taylor*
Roy G. Taylor, Ph.D.
May 13, 2021

---

[1] Deposition Eric Peterson, Pg. 106 Lines 1-7, 5/4/2021
[2] Deposition Eric Peterson, Pg. 112 Lines 9-16, 5/4/2020
[3] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[4] Deposition Eric Peterson, Pg. 116 Lines 1-3, 5/4/2021
[5] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[6] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[7] Audio recording of pursuit radio traffic 4:40, 5/2/2020

[8] Deposition Eric Peterson, Pg. 150 Lines 1-24, 5/4/2021
[9] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[10] Deposition of Eric Peterson, Pg. 157 Lines 2-24, 5/4/2021
[11] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[12] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[13] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[14] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[15] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[16] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[17] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[18] Deposition Eric Peterson, Pg. 211 Lines 4-13, 5/4/2021
[19] Deposition Melissa Nunley, Pg. 10 Lines 1-24, 4/26/21
[20] Deposition Eric Peterson, Pg. 211 Lines 1-6, 5/4/2021
[21] So. Charleston PD AELD Case Report #2020-00005682, 5/2/2020
[22] Deposition Melissa Nunley, Pg. 11 Lines 4-24, 4/26/21
[23] Deposition Melissa Nunley, Pg. 14 Lines 13-24, 4/26/21
[24] Deposition Melissa Nunley, Pg. 15 Lines 16-24, 4/26/21
[25] Deposition Melissa Nunley, Pg. 16 Lines 20-24, 4/26/21
[26] So. Charleston PD AELD Case Report $2020-00005682, 5/2/2020
[27] Deposition Eric Peterson, Pg. 213 Lines 1-24
[28] Deposition David Harvey, Pg. 115 Lines 12-24, 5/4/2021
[29] IACP Model Policy Vehicular Pursuits (2105)
[30] IACP Model Policy Vehicular Pursuits (2015)
[31] Deposition David Harvey, Pg. 164 Lines 10-21, 5/4/2021
[32] IACP Model Policy Vehicular Pursuits (2015)
[33] *Graham v. Connor*, 490 U.S. 386 (1989)



### Roy G. Taylor, Ph.D.
### Criminal Justice and Security Consultant

9650 Strickland Rd. Suite 103-162                    (919) 697-1995
Raleigh, NC 27615                                    e-mail: roy@taylorconsultinggroup.org

_____

#### Qualifications Summary

Professional law enforcement manager with over 40 years of experience in a wide-range of federal, state, local and private Police Chief positions.  Areas of expertise include: law enforcement training; use of force & firearms instruction; recruiting, employee selection, assignment, supervision, evaluation and retention; curriculum development; policies and procedures design and implementation; anti-terrorism, operation security, force protection, physical security, canine utilization; budgeting; public relations; and emergency management.

#### Professional Experience

- **Use of Force Director** Compliant Technologies – 9/2020 to Present
- **Chief of Police Blue Ridge Public Safety** – 4/2014 to Present
- **Litigation Consultant** 12/2013 to Present
- **President/CEO** Signal 88 Security of Charlotte – 7/2012 to 7/2018
- **President/CEO** Capitol Special Patrol – 2/2012 to Present
- **Chief of Police** Capitol Special Police – 8/2002 to Present
- **Lt. Colonel –** Army Reserve – 6/17 to Present
- **Lt. Colonel** – Army National Guard – 3/2000 to 5/2017
- **Antiterrorism/Emergency Management Branch Chief** DoD – 4/2007to 4/2014
- **Task Force Officer** FBI Joint Terrorism Task Force – 10/2007 to 6/2011
- **Chief of Police** National Geospatial Intelligence Agency – 3/2006 to 2/2007
- **Emergency Response Coordinator** Weston Solutions @ Nortel – 2/2000 to 6/2005
- **Chief of Police** Dorothea Dix Hospital Police – 11/1998 to 11/1999
- **Manager of External Affairs** NC Governor's Highway Safety – 3/98 to 11/1998
- **Chief of Police** Liberty, NC - 9/1997 to 12/1997
- **Chief of Police** Norwood, NC - 4/1996 to 9/1997
- **Chief of Police** Bladenboro, NC - 2/1994 to 4/1996
- **Deputy Sheriff K-9** Wake County Sheriff's Office - 11/1990 to 2/1994
- **Law Enforcement Specialized Instructor** Durham Technical College 11/2002 to 12/03
- **Law Enforcement Specialized Instructor** Wake Technical College 2/1990 to 12/2003
- **Police Officer Special Operations/K9 Cary**, NC – 7/1986 to 11/1990
- **Fire Fighter/EMT** Sandusky, OH -6/1984 to 6/1986
- **Police Officer** Plymouth, OH – 9/1984 to 6/1986
- **Police Officer** Olmsted Township, OH – 5/1983 to 6/1986
- **Police Officer** Twinsburg Township, OH – 12/1982 to 8/1984

#### Military

- **State Emergency Preparedness Liaison Officer** US ARNORTH CMD 3/2019 to Pres.
- **Detachment Commander** 138th MP Det. (TDRC), Ft. Bragg, NC 6/2018 to 3/2019
- **Detachment Commander** 346th MP Det. (DCL), Nashville, TN 12/2017 – 5/2018
- **Force Protection Officer** US Forces Command, Ft. Bragg, NC 6/2017 – 11/2017
- **Deputy Asst. Adj. General** Personnel & Manpower, VA National Guard 10/16 – 5/2017

Roy G. Taylor   2

- **Provost Marshal** Joint Civil Support Task Force, Joint Chiefs of Staff –7/2014 to 9/2016
- **Provost Marshal,** VA Army National Guard, Joint Forces Headquarters, Sandston, VA 5/2010-6/2014
- **Company Commander,** VA Army National Guard, 329th Regional Support Group, Virginia Beach, VA 23451, 2/2008-5/2010
- **Executive Officer,** VA Army National Guard, Joint Forces Headquarters, Ft. Pickett, VA 7/2006 – 2/2008
- **Platoon Leader**, NC Army National Guard, Jefferson, NC. Active Duty in support of Operation Iraqi Freedom 1/15/2004 to 4/10/2005
- **Host Nation Transportation Officer**, NC Army National Guard, Durham, NC 9/2002-12/2003
- **Counter Intelligence Agent**, NC Army National Guard, Morrisville, NC 4/2000-3/2001
- **Security Police/Explosive Detection Dog Handler**, USAF Ellsworth AFB, SD 2/80-5/82

### Education

- Ph.D, Criminal Justice, Walden University, Minneapolis, MN 2020
- Master of Philosophy Criminal Justice, Walden University, Minneapolis, MN 2020
- Master of Science Occupational Safety, East Carolina University, Greenville, NC 2003
- Bachelor of Science Criminal Justice, Mount Olive College, Mt. Olive, NC 1997
- Command and General Staff College, US Army, Fort Leavenworth, KS 2014

### Certifications

- G.L.O.V.E. CEW Instructor, Compliant Technologies
- Integrate Communications and Tactics, Train the Trainer, Police Executive Research Forum
- Mental Health First Aid, National Council for Behavioral Health
- Crisis Intervention Team, National Alliance of Mental Illness
- Advanced Force Science Specialist, Force Science Institute
- NC Law Enforcement Officer, Advanced Certificate
- NC Criminal Justice Instructor Certification (firearms, physical fitness, hazardous materials & first responder)
- NC Private Protective Services, Armed and Unarmed Guard Instructor
- TASER Instructor, Axon Technologies
- NC Concealed Handgun Instructor
- VA Private Investigator
- VA Department of Criminal Justice Services Instructor (Special Conservator, Firearms, Armed and Unarmed Guard)
- Physical Security Inspector, Department of Defense
- Certified Homeland Security Specialist III, American College of Forensic Examiners International
- Certified Manager, Institute of Professional Managers
- Command & General Staff - Complex Incident Management IS 400
- Intermediate Emergency Medical Technician
- Cardio Pulmonary Resuscitation (CPR) Instructor, American Heart Association

### Affiliations

- Member – NC Crisis Intervention Team Advisory Board
- Member – Meredith College Master's in Criminal Justice Advisory Board
- President – Company Police Association of North Carolina

Roy G. Taylor   3

- Member – Community Policing Board, International Assoc. of Chiefs' of Police
- Chairman – Business, Education and Technical Support Committee, Wake Co. Local Emergency Planning Committee
- Member – Virginia Association of Chiefs of Police
- Member - North Carolina Chiefs of Police Association
- Member – Fraternal Order of Police, Lodge 81
- Member – International Association of Chiefs of Police
- Member – International Law Enforcement Trainers & Educators Association
- Member – International Law Enforcement Firearms Instructor Association
- Member – American Society for Industrial Security
- Member – Professional Investigators and Security Association

**Publications**

- Taylor, R.G. Summer 1997. "Ethically Correct." *The Journal, The Voice of Law Enforcement 35-39.*
- Taylor, R.G. Mar/Apr 1998. "Creating an Ethical Atmosphere." *Community Policing Consortium 3-5.*
- Taylor, R.G. & Tucker, M. Oct 2015. "Action Always Beats Reaction – Or Does It". International Law Enforcement Educators and Trainers Association Journal 7-9.

**Criminal Justice Consulting**

- WRAL Channel 5 Raleigh, NC
- WTVD Channel 11 Raleigh, NC
- WSB-TV Channel 2 Atlanta, GA
- News & Observer Raleigh, NC
- Spectrum News Channel 17 Raleigh, NC
- Fox 46 Charlotte, NC

**Litigation Services**

- Arizona
- Florida
- Illinois
- Kentucky
- Louisiana
- Maine
- Maryland
- Nevada
- New Mexico
- North Carolina
- Ohio
- South Carolina
- South Dakota
- Texas
- Virginia
- West Virginia
- Wyoming

Roy G. Taylor   4

**Awards and Recognitions**

- National Community Policing Award, National League of Cities (1997)
- Law Enforcement Leadership Award, Mothers Against Drunk Drivers (1995)
- Law Enforcement Officer of the year for State of NC, Veterans of Foreign Wars (1995)
- Governor's Crime Prevention Award (1994)
- Honor Graduate, Basic Law Enforcement Training, NC Justice Academy (1986)
- Honor Graduate, Fire Fighter Academy, Ohio Fire Training Academy (1984)
- Honor Graduate, Security Police Academy, USAF (1979)
- Bronze Star Medal with Valor device, US Army (2005)
- Meritorious Service Medal, US Army (2005)
- Defense Meritorious Service Medal, US Dept. of Defense (2016)

**Training**

- TASER Instructor re-certification, Axon Academy (2021)
- Integrate Communications and Tactics, Train the Trainer, PERF (2020)
- Compliant Technologies Conducted Energy Weapons Instructor (2020)
- Combat Veteran's Crisis Intervention Team,  National Alliance of Mental Illness (2019)
- Mental Health First Aid, USA, National Council for Behavioral Health (2019)
- CIT International Training Conference (2019)
- Crisis Intervention Team, National Alliance of Mental Illness (2019)
- 1911 Armorers Course, Springfield Armory (2019)
- International Assoc. of Law Enforcement Firearms Regional Trng Conference (2019)
- 2018 NC General Instructor Update: Instructional Leadership, NC Justice Academy
- International Assoc. of Law Enforcement Firearms Regional Trng Conference (2018)
- Body Worn Cameras and other recordings used in law enforcement, Force Science Institute (2018)
- Principals of Training, Learning, and Performance, Force Science Institute (2018)
- Communication Skills with Persons in Crisis – De-escalation Techniques, NCJA (2018)
- Mass Fatalities Planning & Response, FEMA (2017)
- Advanced Specialist Behavior Analysis in Force Encounters, Force Science Institute (2017)
- Force Science Certification, Force Science Institute (2016)
- Firearms Instructor Conference, Int. Assoc. of LE Firearms Instructors (2015)
- Incident Command and Emergency Operations Center Interface, VDEM (2013)
- Predictive Analysis, VA State Police (2013)
- IS 400 General & Command Staff Complex Incident Management, FEMA (2013)
- Defense Support of Civil Authorities, Joint Doctrine Command (2013)
- IS 800 National Response Framework, FEMA (2012)
- IS 700 National Incident Management System, FEMA (2012)
- Basic Army Instructor, Regional Training Institute (2012)
- Bomb-Making Materials Awareness Program, DHS, (2011)
- Antiterrorism Officer Course (recertification), US Army Military Police School (2011)
- IS 100 Introduction to Incident Command, FEMA (2011)
- Taser Instructor recertification, Taser International (2011)
- Counterterrorism Course, FBI, Charlottesville, VA (2010)
- Outlaw Motorcycle Gang & Juggalo awareness, VA Gang Association (2010)
- Counterfeit Goods, VA Attorney General's Office (2009)
- Special Agent Course, VA State Police (2008)
- Operations Security Officer Course, HQ Dept. of Army, Ft. Belvoir, VA (2008)
- Advanced Criminal Intelligence Analysis to Prevent Terrorism, DHS (2008)
- Incident Response to Terrorist Bombings, New Mexico Tech. (2008)
- Survival Awareness In-Service, FBI Academy, Quantico, VA (2007)
- Strategic Islamic Source Development, FBI Professional Development Unit (2007)
- Counterintelligence Asset Development and Validation, FBI (2007)
- Security Engineering Training, US Army Corps of Engineers, Ft. Belvoir (2007)
- Physical Security Inspector, National Guard Bureau, Professional Ed Ctr. AR (2007)
- Anti-terrorism Officer Advanced Course, US Army MP School, Ft. Leonard Wood (2007)
- Anti-terrorism Officer Basic Course, US Army MP School, Ft. Leonard Wood (2007)
- Federal Law Enforcement Manager Training Program, FLETC Glynco, GA (2006)
- Police Law Institute, Durham Technical College (2005)
- Instructor Training Update, NC Justice Academy (2005)
- Taser Instructor Training, Taser International (2005)
- In-Service Training Coordinator, NC Justice Academy (2005)
- Advanced Firearms Training, Wake Technical Community College (2003)

- Emergency Response to Terrorism, Incident Mngmnt, National Fire Academy (2001)
- Tactical Pistol II, Blackwater Training Center (2001)
- Hazardous Materials Emergency Operations, Environmental Resource Center (2000)
- Specialized Physical Fitness Training Update, NC Justice Academy (2000)
- Explosive and Hazardous Material Instructor Update, Wilson Community College (2000)
- Patrol Techniques Update, Wake Technical Community College (2000)
- Regional Firearms Training Conference, International Assoc. of Law Enforcement Firearms Instructors (2000)
- Criminal Intelligence Analysis Techniques, Wake Technical Community College (1999)
- Alcohol Screening Tests Device, NC Dept. of Health & Human Services (1999)
- Juvenile Sex Offenders, NC Prof Society on the Abuse of Children (1999)
- Drug, Alcohol & Impaired Driving Training, Intl Assoc. of Chiefs of Police (1998)
- Executive Seminar, Natl Assoc. of Governors' Highway Safety Representatives (1998)
- NHTSA Safe Communities, U.S. Dept. of Transportation (1998)
- Community Policing Instructor, US Department of Justice (1997)
- NC Law Enforcement Specialized Firearms Instructor Certification (1997)
- Internal Affairs Training, Law Enforcement Training Ctr Western Piedmont College (1997)
- Firearms Recertification Long Gun, Randolph Community College (1997)
- Glock Armorer's Course, Wake Co. Sheriff's Dept. (1997)
- NCJA Officer Survival Instructor Certification (1997)
- Counter Drug Investigation, US Army Military Police School (1995)
- Orientation for Law Enforcement Administrators (1995)
- Search Warrant Training, NC Justice Academy (1995)
- Police Cyclist Course, Robeson Community College (1995)
- High Risk Dynamic Entry Tactics, South Eastern Community College (1995)
- High Risk Apprehensions, South Eastern Community College (1995)
- Hostage Rescue Pistol Training, Singleton International (1995)
- Law Enforcement Executive Management Program, NC Institute of Government (1995)
- Computer Networking, Law Enforcement Executive Program (1995)
- NC Law Enforcement Specialized Physical Fitness Instructor (1994)
- PPCT Defensive Tactics Instructor Training, Robeson Community College (1994)
- PPCT Defensive Tactics, Bladen Community College (1994)
- Community Oriented Policing Training, US Dept. of Justice (1994)
- O.C. Pepper Spray Instructor, Bladen Community College (1994)
- First-Line Supervision, Wake Technical Community College (1993)
- Courtroom Security, NC Justice Academy (1993)
- NC Limited Lecturer Certification, First Aid, CPR, & Medical Care in the Jail (1993)
- Defensive Tactics, Wake Technical Community College (1992)
- ASP Baton/Tactical Flashlight, Wake Technical Community College (1992)
- Officer Survival, Wake Technical Community College (1992)
- Civil Process and Supplemental Custody Procedures, Wake Co. Sheriff's Office (1991)
- Field Training Officer, NC Justice Academy (1990)
- NC Specialized First Responder Instructor (1990)
- Law Enforcement Instructor Training, NC Justice Academy (1990)
- Defensive and Precision Driving, NC Highway Patrol (1990)
- Patrol/Narcotics Canine Training, Triad K9 (1988)
- Computerized Speed Detection-Radar, Wake Technical Community College (1987)
- Drug Investigation, Wilson County Technical College (1987)
- Basic Criminal Investigation, Wilson County Technical College (1987)
- Basic Law Enforcement Officer Training, NC Justice Academy (1986) Honor Graduate
- Ohio Peace Officer Training, Cleveland Metro Parks Ranger Academy (1984)
- Ohio Advanced Emergency Medical Technician (1982)
- National Registered Emergency Medical Technician - Intermediate (1981)

Roy G. Taylor   7

- Patrol Dog Explosive Detection Course, US Air Force (1980)
- Patrol Dog Handler Course, US Air Force (1980)
- Law Enforcement Specialist Course (1979)

**Litigation Experience**

1. <u>Wanda Norton as Personal Representative of the Estate of Reshard Vernard Morrell, a minor deceased v. the Tallahassee Alumni Chapter of Kappa Alpha Psi Fraternity, Inc. et al.</u>
   Circuit Court, 2nd Judicial Circuit
   Leon County, Florida
   Case No.: 2012-CA-003594
   Report/Defendant


2. <u>Darlene Talley, individually, and as *guardian ad litem* of Tanisha Williams**,** an incompetent person City of Charlotte; Wayne Goode III, both individually and in his official capacity as a law enforcement officer with the CMPD; and, Joseph White, both individually and in his Official capacity as a law enforcement officer for the CMPD, John Doe, both individually and in his Official capacity as a law enforcement officer for the CMPD</u>
   United States District Court
   Western District of North Carolina
   Charlotte Division
   Civil Action No. 3:14-CV-683
   Deposition/Plaintiff


3. <u>State of North Carolina v. Jason Simmons</u>
   General Court of Justice, Superior Court Division
   Rockingham County, North Carolina
   Case No.: 13CRS 51254-6 & 13CRS 51259
   Trial/Defendant


4. <u>William Thomas, Administrator of the estate of Destin Allan Thomas, deceased v. City of Columbus, Ohio, et al.</u>
   United States District Court
   Southern District of Ohio
   Eastern Division
   Civil Action No. 2:14-CV-00906
   Deposition/Plaintiff


5. <u>Herbert L. Bryant, Plaintiff v. Village of Bald Head Island, North Carolina; Calvin Peck, in His Individual Capacity; and Caroline Mitchell, in Her Individual Capacity, Defendants</u>
   United States District Court
   Eastern District of North Carolina
   Wilmington Division
   Civil Action No. 7:14-CV-223
   Report/Plaintiff

APPENDIX B

6. <u>Vicki McKenney, individually and Vicki McKenney, as Next Friend of Stephen McKenney and as Personal Representative of the Estate of Stephen McKenney, Plaintiff vs. Nicholas Mangino, Cumberland County Sheriff's Office and Windham Police Department, Defendants</u>
   United States District Court
   District of Maine
   Case No.: 2:15–CV–0073-JDL
   Deposition/Plaintiff

7. <u>State of South Carolina v. Steven Barnes</u>
   South Carolina General Sessions Court
   Edgefield County, South Carolina
   Case No.: 2008-GS-19-00011
   Trial/Defendant

8. <u>Jesse Conner, Thomas Cannon, Donald Koons, & Nicholas Terrell, Plaintiffs v. Village of Bald Head Island, North Carolina; Calvin Peck, in His Individual Capacity; and Caroline Mitchell, in Her Individual Capacity, Defendants</u>
   United States District Court
   Eastern District of North Carolina
   Wilmington Division
   Civil Action No.
   Report/Plaintiff

9. <u>John D. Poetzsch, as Administrator of the Estate of Spencer R. Mims, III</u>
   General Court of Justice, Superior Court Division
   Mecklenburg County, North Carolina
   Case No.: 2014-CVS-23815
   Report/Plaintiff

10. <u>State of North Carolina v. Robert M. George</u>
    General Court of Justice, Superior Court Division
    Catawba County, North Carolina
    Case No.: 14 CRS 1482
    Report/Defendant

11. <u>David L. Robinson, Jr. an individual; Dennia Robinson, individually and as Executor of the Estate of David L. Robinson, deceased Plaintiff v. N. Las Vegas Police Dept., Defendant.</u>
    United States District Court
    For the District of Nevada
    Southern Division
    Civil Action No. 2:14-CV-1912-JCM-VCF
    Deposition/Plaintiff

12. <u>Kimberly McNeil, Plaintiff v. Joel D. Greenway, Defendant</u>.
    United States District Court
    For the Eastern District of Virginia
    Civil Action No. 3:16cv269
    Report/Defendant

13. <u>Christian, Plaintiff v. ABM Parking Services, and the City of Charleston, SC, Defendant</u>.
    South Carolina Court of Common Pleas Ninth Judicial Circuit
    Civil Action No. 2015-CP-10-2642
    Report/Plaintiff

14. <u>Juan Perez, Plaintiff v. City of Sweetwater, et al., Defendants</u>.
    United States District Court
    For the Southern District of Florida
    Civil Action No. 1:16-CV-24267
    Trial/Plaintiff

15. <u>Michael Smith, Plaintiff v. Elliot Boyd, Defendant</u>.
    Virginia: In the Circuit Court for the City of Portsmouth
    Civil No. CL 16-528
    Deposition/Plaintiff

16. <u>Jamie Nelson, Plaintiff v. City of Elizabethtown, et al., Defendants</u>.
    United States District Court
    For the Western District of Kentucky
    Civil Action No. 3:16-CV-429-DJH
    Deposition/Plaintiff

17. <u>Traci Ferrell, Plaintiff v. Town of Lillington, et al., Defendants</u>.
    United States District Court
    For the Eastern District of North Carolina
    Civil Action No. 5:15-CV-677-BO
    Report/Plaintiff

18. <u>Dustin Patrick, Plaintiff v. City of Aiken and William Cue, Defendants</u>.
    United States District Court
    For the District of South Carolina
    Civil Action No. 1:16-3496-JMC-PJG
    Report/Plaintiff

19. <u>Genger Poole, Administrator of the Estate of William Dean Poole, Plaintiff v. Gaston County, NC, et al., Defendants</u>.
    United States District Court
    For the District of North Carolina
    Civil Action No. 3:15-CV-309-DCK

Deposition/Plaintiff

20. <u>Karras C. Cohen, Jr., Plaintiff v. Spartanburg County Sheriff's Office, et al., Defendants.</u>
United States District Court
For the District of South Carolina
Civil Action No. 7 :17-CV-005130-HMH-KFM
Deposition/Plaintiff

21. <u>Reginald Bruce, Plaintiff v. Florence County Sheriff's Office, et al., Defendants</u>
United States District Court
For the District of South Carolina
Civil Action No. 4:17-cv-00615-RBH-TER
Report/Plaintiff

22. <u>DaZhawn Williams, Plaintiff v. City of Seat Pleasant, et al. Defendants</u>
In the Circuit Court of Prince George's County, MD
Case No. CAL16-38696
Report/Plaintiff

23. <u>Avery C. Vanderhurst, Plaintiff v. CPL Neil Mohardt, Defendant</u>
United States District Court
For the District of Maryland
Case No. 13-CV-02143-PWG
Deposition/Plaintiff

24. <u>Chris Fields, Plaintiff v. Town of Walterboro, et al. Defendants</u>
United States District Court
For the District of South Carolina
Case No. 2:17-cv-01741-DCN-BM
Deposition/Plaintiff

25. <u>Jean Suarez, Representative of the Estate of Daniel Tyson, Deceased, Plaintiff v. City of Hollywood, FL et al. Defendants</u>
United States District Court
Fort the District of Southern Florida
Case No. 16-62215-cv-WPD
Deposition/Plaintiff

26. <u>Kevin Jennings, Plaintiff v. Jonathan Iseman, Defendant</u>
United States District Court
For the District of South Carolina
Case No. 3:17-cv-03009-JMC-PJG
Report/Plaintiff

APPENDIX B

27. Christopher Jamon Byrd, Plaintiff v. Charles "Chuck" L. Wright in his official capacity as the Sheriff of Spartanburg County, Spartanburg County Sheriff's Department, Spartanburg County, John Shafer, and Curtis Norwood, Defendants
United States District Court
For the District of South Carolina
Case No. 7:17-cv-02436-TMC-JDA
Report/Plaintiff

28. Rashawn Quaneece Middleton, as Personal Representative of the Estate of  Roy Howard Middleton, Sr., deceased, Plaintiff v. Sheriff David Morgan, in his official capacity as Sheriff of Escambia County, Florida, Deputy Wayne Wright, Deputy Sheriff Jeremiah Meeks, & Sergeant Matthew White individually, and in their official capacity, as Deputy Sheriffs of Escambia County, Florida,  Defendant.
United States District Court
For the District of Northern Florida
Case No: 3:17-cv-00346-MCR-GRJ
Report/Plaintiff

29. Torrence "little boosie" Hatch; Larry Anderson; Tyeon Givens; and Nathia Enice Daniels and Peyton Nicole Daniels, minors, by and through their parent and next friend, Tyeon Givens, Plaintiffs v. Dillard's, Inc.; Jim Wilson & Associates, LLC; Weiser Security Services, Inc.; City  of Biloxi, Mississippi; and John Does 1–10, Defendants.
United States District Court
For the Southern District of Mississippi
Case No: 1:17-CV-307-HSO-JCG
Report/Plaintiff

30. Cutrena Parker & Tyronne Williams, Sr., Plaintiffs v. Ernie Coleman, David E. Tyson, Daniel Martin, Christopher Emanuel, Beaufort County Sheriff and Deputies, The Ohio Casualty Insurance Company, as Surety, Defendants.
United States District Court
For the Eastern District of North Carolina
Case No: 4:17-cv-157-BO
Report/Plaintiff

31. Alexis Lewis v. City of Laurens, Laurens County Sheriff's Office, Greenwood County Sheriff's Office, South Carolina Dept. of Public Safety, and Quest Hallman, Defendants.
State of South Carolina
County of Greenwood
Case No. 2017-CP-24-01322
Report/Plaintiff

APPENDIX B

32. <u>Tanya Brown, Administrator of the Estate of Brandon Jones, Plaintiffs v. Alan Buford, Greg King and City of Cleveland, Defendants.</u>
United States District Court
For the Northern District of Ohio
Case No: 1:16-cv-00921
Report/Plaintiff

33. <u>Linda Hanna and Gary Hanna, Plaintiffs v. Dillon Police Department, Corporal Brian Genwright, Individually and as an employee of Dillon Police Department, Defendants.</u>
United States District Court
For the District of South Carolina
Florence Division
Civil Action No. 4:17-cv-3273-RBH-KDW
Report/Plaintiff

34. <u>Lamar Wright, Plaintiff, v. City of Euclid, Police Officer Kyle Flagg, and Police Officer Vashon Williams, Defendants</u>.
United States District Court
For the Northern District of Ohio
Case No: 1: 17-cv-02503
Report/Plaintiff

35. <u>Thomas Napier, Plaintiff, v. Lincoln County Sheriff's Office, and Zachary Sowards, in his official and individual capacity, Defendants.</u>
United States District Court
For the Southern District of West Virginia
Case No: 2:18-cv-11111
Report/Plaintiff

36. <u>William D. Bartell, Individually and as Personal Representative of the Estate of Virginia M. Bartell, deceased, Plaintiff, v. York County, City of Rock Hill, Doug Echols, Individually and in his official capacity, Rock Hill Police Department, Chris Watts, Individually and in his official capacity, Benjamin Glynn, Individually and in his official capacity, and Luke Boling, Individually and in his official capacity, Defendants.</u>
United States District Court
District of South Carolina
Case No: 0:18-cv-00422-MGL
Report/Plaintiff

37. <u>Johnny O. Love, Plaintiff v. Chief Nathan Blevins, Individually and in his official capacity; War Police Department, and the City of War, a Political Subdivision of the State of West Virginia, Defendants</u>.
Circuit Court of McDowell County, West Virginia
Case No: 18-c-13
Deposition/Plaintiff

38. <u>James Howard Allen, Plaintiff v. City of Gastonia, North Carolina and Officer Josh Lefevers in his official and individual capacity, Defendants</u>.
In the General Court of Justice, Superior Court Division
Gaston County, North Carolina
Case No: 17-cvs-439
Report/Plaintiff

39. <u>Justin Strolis, Plaintiff v. Lucas Heise, individually, and as a Deputy with the Richmond County Sheriff's Department, Defendants</u>.
United States District Court
Southern District of Georgia
Case No: 1:18-cv-00137-JRH-BKE
Report/Plaintiff

40. <u>Steven C. Crawley, Plaintiff v. City of Phoenix, Arizona, Phoenix Police Department, Officer Louis McAnany; Officer Henry Smith; Officer Dwayne Conklin; Officer Sean Holman; officer Adam Nelson; Officer Michael Morrissey, Defendants</u>.
United States District Court
For the Southern Division of Arizona
Case No: 2:16-cv-04307-JJT-JFM
Report/Plaintiff

41. <u>Xavier Davis, Plaintiff, v. City of Rock Hill, Doug Echols, Individually and in his official capacity, Rock Hill Police Department, Chris Watts, Individually and in his official capacity, Benjamin Glynn, Individually and in his official capacity, and Luke Boling, Individually and in his official capacity, Defendants</u>.
United States District Court
District of South Carolina
Case No: 0:18-cv-02450-MGL
Report/Plaintiff

APPENDIX B

42. <u>Amanda Kay Renfroe, individually, as the widow of Micheal Wayne Renfroe, deceased;
    and as the natural mother and adult next friend of S.W.R., her minor child, who are the
    sole heirs and wrongful death beneficiaries of Michael Wayne Renfroe, deceased, v.
    Robert Denver Parker, Randall Tucker, and Does 1-100, Defendants.</u>
    United States District Court
    Southern District of Mississippi
    Case No: 3:18-cv-00609-DPJ-LRA
    Report/Plaintiff

43. <u>Bridgett Taylor, Plaintiff v. Richland County Sheriff 's Office, Defendants.</u>
    State of South Carolina
    County of Richland
    In the Court of Common Pleas
    Case No : 2014-CP-40-6934
    Trial/Plaintiff

44. <u>Peter Klassen, Plaintiff v. Wallach Construction/PB Materials Holding, Inc, Walter
    Ziemann, Tyler Wallach, Johnny Neufeld, and Gaines County Texas and Gaines County
    Deputy Sheriff's Ken Ketron, and Clint Low, Defendants.</u>
    State of Texas
    Gaines County
    106th Judicial District
    Cause No. 18-10-17955
    Report/Plaintiff

45. <u>Joshua M. Settle, Plaintiff v. Nathan S. Stepp, Individually as a member of the West
    Virginia State Police, Defendant.</u>
    United States District Court
    Southern District of West Virginia
    Case No. 2:18-cv-01177
    Report/Plaintiff

46. <u>John Givens, Leland Dudley & Bernice Strong Administrator of the Estate of David
    Strong, Plaintiff v. City of Chicago, Defendants.</u>
    Circuit Court of Cook County, Illinois
    County Department of Law Division
    Case No. 16 L 10768
    Trial/Defendant

47. <u>Paterson Brown, Sr. & Kathy Brown, Co-Administrators of the Estate of Paterson Brown, Jr., Deceased, Plaintiff v. David Cobb, Individually and in His Official Capacity as a Police Officer for the City of Richmond, Virginia and the City of Richmond, Defendants.</u>
United States District Court
Eastern District of Virginia
Case No. 3:17-CV-00627
Report/Defendant

48. <u>David Bruce Sanders, Jr., Plaintiff v. Robert H. Taylor, Chris Morrow, T. Woodward, Chuck Wright, both individually and in his official capacity as the Sheriff of Spartanburg County Sheriff's Office, Spartanburg County Sheriff's Office and Spartanburg County</u>
United States District Court
For the District of South Carolina
Case No. 7:18-CV-01471-JDA
Report/Plaintiff

49. <u>Ishmael Lateef, Plaintiff v. B.J. Barnes, and M.B. Stewart, Defendants</u>
United States District Court
Middle District of North Carolina
Case No. 1:18-cv-00571
Report/Plaintiff

50. <u>Estate of David Cutler, Plaintiff v. Pima County, et al., Defendants</u>
United States District Court
District of Arizona
Case No. 18-cv-0383-FRZ
Report/Plaintiff

51. <u>Delton Jasper and Bakari Sellers, as Co-Personal Representatives of the Estate of Delvin Tyrell Simmons, Deceased, Plaintiffs v. Spartanburg Methodist College, Spartanburg Methodist College Campus Safety Department, and Andrew Tomlinson, Individually and/or in his Official Capacity, Defendants</u>
State of South Carolina
County of Spartanburg
In the Court of Common Pleas
Case No : 2017-CP-42-04000
Deposition/Plaintiff

52. <u>Bruce Parker and wife Joanne Parker, Plaintiffs, v. Cole Properties & Investments, Inc., Defendants</u>
State of North Carolina
Mecklenburg County
In the General Court of Justice, Superior Court Division
Case No : 18-CvS-15095
Report/Defendant

APPENDIX B

53. James Barnett, Plaintiff v. City of Laurel, Bryce Gilbert, Wade Robertson, and Does 1 – 100, Individually, and in Their Official Capacities as Employees, Agents, Officials and Contractors for the City of Laurel, and/or Political Subdivisions of the State of Mississippi, Defendants
United States District Court
Southern District of Mississippi
Case No : 2:18-cv-92-KS-MTP
Report/Plaintiff

54. Joleen Youngers, Personal Representative of the Estate of Steven Marquez, Karen Marquez, and Michael Leonard Marquez, Plaintiffs v. City of Las Vegas, Elias Rael, Caleb Marquez, and Joseph Mascarenas, Defendants
First Judicial District Court
State of New Mexico
County Of Santa Fe
Case No. D-412-cv-2018-00183
Report/Plaintiff

55. Mother Doe, Individually and as the Mother and Natural Guardian for Jane Doe, a Minor, Plaintiff v. Richland County School District 2, Sheriff of Richland County in his Official Capacity, d/b/a Richland County Sheriff's Department, John E. Ewing & Jamel Bradley, Defendants
United States District Court
District of South Carolina
Case No : 3:18-cv-02731-CMC
Deposition/Plaintiff

56. Robert Cornelius, Plaintiff v. City of Mount Washington, et. al, Defendants
United States District Court
Western District of Kentucky
Louisville Paducah Division
Case No : 3:18-cv--CV-341-DJH
Report/Plaintiff

57. Ylovy Fleurant, and Hernite Fleurant, as Personal Representatives of the Estate of Samson Fleurant, Deceased, Plaintiff v. City of Port St. Lucie, Florida, a Florida Municipal Corporation, Colin Duncombe, in his individual capacity, Stephanie Moo, in her individual capacity, Kenneth Frid, in his individual capacity, and Leon Niemczyk, in his individual capacity, Defendants
United States District Court
Southern District of Florida
Fort Pierce Division
Case No: 2:19-cv-14032
Deposition/Plaintiff

APPENDIX B

58. <u>Latrent Redrick and Jamon Pruiett, Plaintiffs v. City of Akron, Ohio, et al., Defendants</u>
United States District Court
Northern District of Ohio
Eastern Division
Case No : 5:18 CV 02523
Report/Plaintiff

59. <u>Estate of Aquones Cathery, Deceased, Plaintiff v. City of Chicago, et al. Defendants</u>
Circuit Court of Cook County, Illinois
County Department, Law Division
Case No: 18L 2421
Deposition/Defendant

**60.** <u>Brittany M. Jester, Individually and as Personal Representative for the Estate of Clayborn
Dallas Jester, deceased, Plaintiff v. The South Carolina Department of Transportation, the
South Carolina Department of Public Safety, the City of Greenville Public Works, the
Greenville Police Department, and the City of Greenville, Defendants</u>
State of South Carolina
County of Greenville
In the Court of Common Pleas
Case No : 2017-CP-23-07759
Report/Plaintiff

61. <u>Cleo Murdock, Administratix of the Estate of Russell Elswick, Deceased, Defendants v.
Kenneth Mack Gaddy, Christopher David Lyons, and Kanawha County Sheriff John
Rutherford, Defendants.</u>
United States District Court
Southern District of West Virginia
Case No : 2 :18-cv-01339
Deposition/Plaintiff

62. <u>Mary Gail Whaley, Individually, and as Administratrix of the Estate of Clarence
Clemmons Layfield, Jr. Deceased, Plaintiff v. Trooper 1st Class Christopher T. Speece,
individually and in his official capacity; and the West Virginia State Police, a division of
the State of West Virginia, Defendants.</u>
Circuit Court of Kanawha County
West Virginia
Case No : 18-C-124
Report/Plaintiff

63. <u>Cruz Rodriguez and Aurea Rodriguez, Plaintiffs. v. City of Chicago, Illinois, and</u>
<u>Chicago Police Officers Chad Smith, Scott Konior, Michael Fergus, John Swarbrick,</u>
<u>Marco Mendoza, Luis Reyes, Marty Ridge, and Geoffrey Baker, Defendants.</u>
United States District Court
Northern District of Illinois
Case No : 16-cv-5720
Deposition/Defendant

64. <u>April Marie Adkins, Plaintiff v. Louis Roberts, III Individually and in his official</u>
<u>capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester,</u>
<u>Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5 :18-cv-271-MCR-MJF
Report/Defendant

65. <u>Lance C. Sellers, Plaintiff v. Louis Roberts, III Individually and in his official capacity as</u>
<u>Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually,</u>
<u>Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5 :18-cv-275-MCR-MJF
Report/Defendant

66. <u>Karonisha Ramsey, on her own behalf and as Special Administrator of the Estate of</u>
<u>Kajuan Raye, Deceased, Plaintiff v. SGT. John Poulos, individually, and the City of</u>
<u>Chicago, a municipal corporation, Defendants</u>.
United States District Court
Northern District of Illinois
Case No : 1:2016cv10913
Trial/Defendant

67. <u>Scott Kuck, as Personal Representative of the Wrongful Death Estate of Sarah Lee Circle</u>
<u>Bear, Deceased,</u> Plaintiff v. Sheriff Mark Milbrandt, Brown County, Sheriff Jay Tasa,
<u>Roberts County, Deputy Andy Miller, Trooper Jerry Kastein in his individual capacity,</u>
<u>Jillyn Brooks, Joelle Thomas, Harmony Mattson, John/Jane Doe Supervisors 1-5,</u>
<u>Jennifer White, Nicole Leslie, Brian Bahr, Joe Embury, John/Jane Doe Officers 5-10,</u>
<u>Individually and in their official capacity, Lisa Meier, Northeastern Mental Health</u>
<u>Center, John/Jane Doe Medical Staff 2-5, Defendants.</u>
United States District Court
Northern District of South Dakota
Case No : 1:18-cv-1014-CBK
Report/Plaintiff

APPENDIX B

68. Kenneth Shaw, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00512-TKW-MJF
Report/Defendant

69. Vikki Stephens, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00515-MCR-MJF
Report/Defendant

70. Scotty Williams, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00514-MCR-MJF
Report/Defendant

71. Kimberly Nicole Wood, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00505-MCR-MJF
Report/Defendant

72. Trevor Day, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00506-MCR-MJF
Report/Defendant

73. Darrell Watkins, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, and Trevor Lee, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00517-MCR-MJF
Report/Defendant

APPENDIX B

74. <u>Abranda Ward, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, and Trevor Lee, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00527-MCR-MJF
Report/Defendant

75. <u>Willie Sims, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, and Trevor Lee, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00513-MCR-MJF
Report/Defendant

76. <u>Patrick Themar, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, and Trevor Lee, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00523-MCR-MJF
Report/Defendant

77. <u>Donnie Shores, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, and Trevor Lee, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00526-MCR-MJF
Report/Defendant

78. <u>John Raines, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00510-MCR-MJF
Report/Defendant

79. <u>Willie Pippin, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, and Trevor Lee, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00521-TKW-MJF
Report/Defendant

80. <u>Lora Penn, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co.
    Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
    United States District Court
    Northern District of Florida
    Case No : 5:19-cv-00511-TKW-MJF
    Report/Defendant

81. <u>Cole Padgett, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson
    Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
    United States District Court
    Northern District of Florida
    Case No : 5:19-cv-00509-MCR-MJF
    Report/Defendant

82. <u>Tillman McCroan, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of
    Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
    United States District Court
    Northern District of Florida
    Case No : 5:19-cv-00507-MCR-MJF
    Report/Defendant

83. <u>Kimberly Hazelwood, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of
    Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
    United States District Court
    Northern District of Florida
    Case No : 5:19-cv-00508-MCR-MJF
    Report/Defendant

84. <u>Hansford Griffis, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of
    Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, and Trevor Lee,
    Individually, Defendants</u>.
    United States District Court
    Northern District of Florida
    Case No : 5:19-cv-00525-MCR-MJF
    Report/Defendant

85. <u>James Fears, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson
    Co. Florida, (former) Deputy Zachary Wester, Individually, and Trevor Lee, Individually,
    Defendants</u>.
    United States District Court
    Northern District of Florida
    Case No : 5:19-cv-00524-MCR-MJF
    Report/Defendant

APPENDIX B

86. Richard Driggers, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00504-MCR-MJF
Report/Defendant

87. Tyler Daniels, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00518-MCR-MJF
Report/Defendant

88. State of Wyoming v. Daryl Kisch
Superior Court, Goshen County
Case No. CR-2019-31
Trial/Defendant

89. Justin Creamer, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00496-MCR-MJF
Report/Defendant

90. John Coulliette, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00530-MCR-MJF
Report/Defendant

91. Joshua Clennen, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00499-MCR-MJF
Report/Defendant

92. Timothy Bruner, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00501-TKW-MJF
Report/Defendant

APPENDIX B

93. <u>Michael Brady, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00500-MCR-MJF
Report/Defendant

94. <u>Benjamin Bowling, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00497-MCR-MJF
Report/Defendant

95. <u>Derek Benefield, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00498-MCR-MJF
Report/Defendant

96. <u>Hope Adkinson, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00494-MCR-MJF
Report/Defendant

97. <u>Jason Sherrod, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00242-TKW-MJF
Report/Defendant

98. <u>Teresa Odom, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:19-cv-00253-TKW-MJF
Report/Defendant

99. <u>James Coffelt, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, and (former) Deputy Zachary Wester, Individually, Defendants.</u>
United States District Court
Northern District of Florida
Case No : 5:19-cv-00246-TKW-MJF
Report/Defendant

100. <u>Christopher Marr, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, and Trevor Lee, Individually, Defendants.</u>
United States District Court
Northern District of Florida
Case No : 5:19-cv-00519-MCR-MJF
Report/Defendant

101. <u>Monica Willis, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, Defendants.</u>
United States District Court
Northern District of Florida
Case No : 5:19-cv-00516-MCR-MJF
Report/Defendant

102. <u>Joan McCue, Plaintiff v. Louis Roberts, III in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, Defendants.</u>
United States District Court
Northern District of Florida
Case No : 5:19-cv-00520-MCR-MJF
Report/Defendant

103. <u>Jonathan Price et al. Plaintiff v. City of Kings Mountain; Kings Mountain Police Department; Jonathan Price, in his individual capacity; and JONATHAN PRICE, in his capacity as a Kings Mountain Police Officer, Defendants.</u>
United States District Court
Western District of North Carolina
Case No : 3:19-cv-00352
Report/Plaintiff

104. <u>Christian Topete, Plaintiff v. Mesa Police Department et al., Defendants.</u>
United States District Court
District of Arizona
Case No : 2:18-cv-03127-ROS-ESW
Report/Plaintiff

105.  Dr. Kristen Decina, Plaintiff v. Horry County Police Department and Amos Berry,
      Defendants.
      United States District Court
      District of South Carolina
      Case No: 4:19-cv-02079-DCC-KDW
      Deposition/Plaintiff

106.  Taylor Quinn, Plaintiff v. Lt. Christopher K. Zerkle, the West Virginia State Police,
      Sgt.Paxton Lively, Sgt. Rick keglor, Deputy Brandon Kay, Deputy Jamie Miller, and the
      Kanawha County Commission, Defendants.
      Circuit Court Of Kanawha County
      West Virginia
      Case No: 20-c-320
      Report/Plaintiff

107.  Rebeca Sable, Individually as surviving spouse and as personal representative, et al. Plaintiffs
      v. Baltimore County Government, Defendant.
      Circuit Court Of Maryland
      Baltimore County
      Case No: C-03-CV-19-002696
      Report/Plaintiff

108.  Betiersten R. Wade and Vernice Robinson, Individually and on behalf of all the Heirs at law
      and wrongful death beneficiaries of George Robinson, Deceased, Plaintiffs v. City of
      Jackson, Mississippi; Anthony Fox (In his individual and official capacities); Desmond
      Barney (In his individual and official capacities); Lincoln Lampley (In his individual and
      official capacities); and American Medical Response, Inc., Defendants.
      United States District Court
      Southern District of Mississippi
      Case No: 3:19-cv-00897-CWR-FKB
      Report/Plaintiff

109.  Kenneth Brown, Plaintiff v. Broward County Sheriff's Office, Sheriff Scott Israel, and
      the Unidentified Officers of the Broward County Sheriff's Office, Defendants.
      In the Circuit Court for the 17th Judicial Circuit,
      In and for Broward County, Florida
      Case No. 17-CA-003689
      Report/Plaintiff

APPENDIX B

110. <u>Jacqueline Crane, as Statutory Plaintiff and surviving mother of Ethan Robinson v.</u>
<u>County of Pinal, a political subdivision of the State of Arizona ; Pinal Co. Sheriff's</u>
<u>Office ; Deputy T. Farnsworth and Jane Doe Farnsworth, husband and wife ; Does I</u>
<u>through V, inclusive ; ABC Partnerships I through V, inclusive, Defendants.</u>
Superior Court of the State of Arizona
In and for the County of Pinal
Case No. S1100-cv-202000241
Report/Plaintiff

111. <u>Francisco Olvera, Plaintiff v. City of Walhalla, SC, et al., Defendants.</u>
United States District Court
District of South Carolina
Case No:
Report/Plaintiff

112. <u>Patricia Hicks, Plaintiff v. Cook County Sheriff's Office, Officer Murphy, Star #566,</u>
<u>Officer Murphy, Star #566, Officer Mousel, Star #388, Officer Dwyer, Star #32, Officer</u>
<u>Doyle, Star #332, Officer Mears, Star #192, Officer O'Mally, Star #5, Officer Gosling,</u>
<u>Star #712, Defendants.</u>
United States District Court
Northern District of Illinois
Case No : 15-cv-6852
Report/Defendant

113. <u>Renee Armenda, Plaintiff v. City of Goodyear, AZ ; Matthew Ross, a married man ;</u>
<u>Goodyear Police Department ; et al., Defendants.</u>
United States District Court
District of Arizona
Case No: 2:19-cv-05186-SMB
Deposition/Plaintiff

114. <u>Farid Saleh & Miraj Bibi, Plaintiff v. Officer Irman Farooq, A/K/A Irman Farooq, &</u>
<u>Fairfax County, Defendants.</u>
United States District Court
Eastern District of Virginia
Case No: 1:19-cv-1546
Report/Plaintiff

115. <u>Darryl Reynolds, Plaintiff v. City of North Charleston, Defendants.</u>
State of South Carolina
County of Charleston Court of Common Pleas
For the Ninth Circuit
Case No: 2019-CP-10-4788
Deposition/Plaintiff

APPENDIX B

116.   <u>Antonio Johnson-Fulwood, Plaintiff v. Horry Co. Police & Matthew Hill In His Official</u>
       <u>Capacity, Defendants.</u>
       State of South Carolina
       County of Horry Court of Common Pleas
       For the Fifteenth Circuit
       Case No: 2019-CP-2605895
       Report/Plaintiff

117.   <u>Timothy Davis, Plaintiff v. City of Columbus Ohio, et al. Defendants</u>.
       United States District Court
       Southern District of Ohio
       Case No: 2 :17-cv-00823
       Report/Plaintiff

118.   <u>Christina Prince, Individually, and as Personal Representative Of the Estate of David M.</u>
       <u>Prince Jr., Deceased, Plaintiff v. City of Deming, New Mexico, et al. Defendants.</u>
       State of New Mexico
       County of Luna
       Sixth Judicial District
       Case No: D-619-CV-2018-00406
       Report/Plaintiff

119.   <u>Lisa Tyree and Tim Tyree, as co-administrators of the Estate of Jeffrey Tyree Deceased,</u>
       <u>Plaintiff v. Bradley Colas and N. Tuft-Williams, Defendants.</u>
       Commonwealth of Virginia
       Circuit Court of Virginia Beach
       Case No:
       Report/Plaintiff

120.   <u>Cardell Vance II, as Personal Representative of the Estate of Cardell Vance, III</u>
       <u>Deceased, Plaintiff v. Sheriff Homer Deloach, City of Crescent, Florida, Daniel Taylor</u>
       <u>and Chad Ward, in their individual capacities, Defendants.</u>
       United States District Court
       Middle District of Florida
       Jacksonville Division
       Case No: 3 :19-cv-00999-J-39MCR
       Report/Plaintiff

121.  <u>Armond White and Johnny Thomas, Plaintiffs v. City of Chicago ; and Chicago Police Officers Escobedo, Brandt, Soto Diaz, Zaragoza, Cueller, Espinoza, Bernaciak, and Brink, Defendants</u>.
United States District Court
Northern District of Illinois
Eastern Division
Case No: 18-cv-1404
Report/Plaintiff

122.  <u>Andricka Williams, Plaintiffs et al. v. City of Baton Rouge, et al., Defendants</u>.
19th Judicial District Court
Parish of East Baton Rouge
State of Lousiana
Docket No. : 659,090 Sec. 24
Review/Defendants

123.  <u>Catherine Bradley, Plaintiff v. Nathan R. Burger, John Does 1-3, Darlene Wilson, Wal-Mart, Inc., Wal-Mart Stores East, L.P., Defendants</u>.
United States District Court
District of South Carolina
Rock Hill Division
Case No. : 0 :20-cv-03360-JFA-PJG
Report/Plaintiff

124.  <u>Brittany Todd, et al. v. South Carolina Department of Corrections, et al</u>.
Court of Common Pleas
Ninth Judicial Circuit
State of South Carolina
Case No. : 2020-CP-10-00620
Deposition/Plaintiff

125.  <u>State of North Carolina v. Robert Granato</u>
General Court of Justice, Superior Court Division
Forsythe County, North Carolina
Case No.: 19CR8192-93
Report/Defendant

126.  <u>Antwan Smith, Antwan Smith, Jr., Camilla Reeves, Iyana Smith, and Nyla Smith, Plaintiffs v. City of Port St. Lucie, Joshua Saffomilla, Benjamin Thayer, and John Delacroce, Defendants</u>.
United States District Court
Southern District of Florida
Fort Pierce Division
Case No. : 2 :20-Civ-14252-DMM
Report/Plaintiff

APPENDIX B

127.  <u>Gizelle Cooper, Plaintiff v. Florence Co. Sheriff's Dept. and Shane Keith, Defendants</u>.
United States District Court
District of South Carolina
Florence Division
Case No.: 4:20-CV-3530-SAL-KDW
Report/Plaintiff

128.  <u>Thomas Dent, Guardian for Karlee Dent, and as a Guardian for J.A.M., the minor child of Karlee Dent, Plaintiffs v. City of Parkersburg, a West Virginia Municipality, County Commission of Wood County, a Corporation, West Virginia State Police, a State Law Enforcement Agency, John Does 1-10, and Joel Seth Echard, Defendants</u>.
Circuit Court of Wood County
West Virginia
Case No.: 19-C-236
Report/Plaintiff

129.  <u>Maria Dominique Turner, Plaintiff v. Louis Roberts, III, Individually and in his official capacity as Sheriff of Jackson Co. Florida, (former) Deputy Zachary Wester, Individually, Defendants</u>.
United States District Court
Northern District of Florida
Case No : 5:20-cv-00199-MCR-MJF
Report/Defendant

130.  <u>William Allen Means, Plaintiff v. E.M. Peterson, D. Harvey, and The City of South Charleston, Defendants.</u>
United States District Court
Southern District of West Virginia
Case No : 2:20-cv-11111
Report/Plaintiff

## MATERIALS REVIEWED

01.  Complaint 2:20-cv-11111

02.  South Charleston Police Dept. Incident Report with attachments #2020-00005682

03.  Audio recording or radio traffic during motorcycle pursuit 5/2/2020

04.  West Virginia Uniform Traffic Crash Report #WVSP20-1506, 5/2/2020

05. South Charleston Police Dept. Emergency Response & Vehicle Pursuit Policy 23.0

06. Map of pursuit route 5/2/2020

07. Melissa Nunley By-stander video 5/2/2020

08. Eric Peterson video of pursuit route

09. Deposition E.M. Peterson

10. Deposition D. Harvey

11. Deposition Mary Chandler

12. Means_Boone County Criminal Complaint

13. *Graham v. Connor*, 490 U.S. 386 (1989)

14.  NC Basic Law Enforcement Training, Arrest, Search, and Seizure lesson plan

15.  Robert Farb, *Arrest, Search, and Investigation in North Carolina*, 4th ed.

16.  *Graham v. Connor*, 490 U.S. 386 (1989)

17. IACP Model Policy Vehicular Pursuits (2105)

## FACTS ASSUMED TO BE TRUE

1.  On May 2, 2020, Mr. William Means was on his way to visit a friend who was going to give him a clutch cable for a motorcycle that Mr. Means was repairing.

2.  Mr. Means was driving a Honda CBR motorcycle that had been given to him by his aunt's boyfriend. The motorcycle had an expired West Virginia registration plate on it that Mr. Means said was on the bike when he received it. He acknowledged the license plate was not in his name, and it was expired.

3.  Corporal (CPL) Peterson was an on-duty law enforcement officer for the City of South Charleson, WV, and was operating a marked SUV.

4.  CPL Peterson had just picked up breakfast for himself and a maintenance garage employee at Chick-fil-a. He then stopped in the parking lot to speak to Stanley, a Metro Communications dispatcher.

5.  Upon leaving the parking lot, CPL Peterson noticed a motorcycle that had been spray-painted solid black. The motorcycle was stopped at the traffic light, waiting to turn onto Highway 119.

6.  CPL Peterson caught up to the motorcycle at Hwy 119 and Southridge Blvd., South Charleston. He relayed the registration plate information to Metro Communications, and they responded that the license plate was for a 2009 Yamaha XT250 and was expired. The motorcycle was spray-painted with black primer, which CPL Peterson believed was common on motorcycles that may have been stolen or had their identity altered. He radioed this information to other units and requested they start towards his location on Hwy 119 to conduct a traffic stop of the motorcycle.

7.  CPL Peterson stated the motorcycle operator looked over his shoulder multiple times while at the red light, checking his position. Once the traffic light turned green the motorcycle continued southbound on US 119. CPL Peterson radioed the other units a description of the motorcycle operator and their location.

8.  As the motorcycle approached the 73.6-mile marker, it moved to the left lane of travel, indicating that it may turn off US 119 and onto Ruth Rd. CPL Peterson decided to initiate a traffic stop as the motorcycle turned onto Ruth Rd. He stated that he turned on the emergency lights and siren, providing a clear visual and audible signal for the motorcyclist to stop.

9.  The operator looked over his shoulder and instead of stopping began to speed up. The motorcycle continued on Ruth Rd. to the intersection of Trace Fork Rd., where it turned onto Trace Fork Rd.

10.  The motorcycle continued on Trace Fork Rd. at speeds ranging from 15 mph to a top speed of 53 mph. It then turned onto Heavenly Dr., where the posted speed limit is 25mph.

APPENDIX D

11.  Lieutenant (Lt.) Paskel instructed CPL Peterson to "let him go if the speeds pickup or he starts to get reckless." CPL Peterson acknowledged that radio message by responding, "copy Sir."

12.  CPL Peterson reported that while negotiating both sharp and slight turns, he observed the motorcycle operator cross into the opposite lane of travel at high and low speeds, also putting his foot down on the pavement, seeming to indicate he was unsure of his or the motorcycle's abilities.

13.  The motorcycle continued on Heavenly Dr., passing Elwood Dr., where it did not stop for a stop sign. The motorcycle then turned off Heavenly Dr. onto a dirt/gravel access road with multiple ruts and potholes.

14.  CPL Peterson testified that he did not operate his siren throughout the pursuit. He said that he turns it off so that he can be clear when talking on the radio. He also said that he has some hearing loss in his left ear from a shotgun being fired. So, it is difficult for him to hear.

15.  The motorcycle operator slowed down due to the rough terrain and continued to look over his shoulder. He appeared to be trying to take off his backpack but was unsuccessful.

16.  CPL Peterson wrote that he observed some parts of the motorcycle start to fall from the frame and hit the roadway due to the rough ride.

17.  The motorcycle approached a creek bed with water flowing in it. The motorcycle speeds up, and the operator places his feet up in the air and traveled through the water. The motorcycle continued up a hillside and turned left onto Rabel Mountain Rd.

18.  CPL Peterson drove through the creek and continued to follow the motorcycle on Rabel Mountain Rd.

19.  Patrolman (Ptl) David Harvey was waiting at the intersection of Rabel Mountain Rd. and Brounland Rd. and joined the pursuit behind CPL Peterson and took over radio communication for the pursuit.

20.  The motorcycle failed to come to a complete stop as it turned left from Rabel Mountain Rd. onto Brounland Rd. It continued on Brounland Rd. past the Sand Plant road intersection and approached a section of roadway that was narrowed down to one lane due to road repair. The motorcycle failed to stop to alternate with oncoming traffic and proceeded directly through the coned-off area into the opposite direction of traffic.

21.  The motorcycle continued to travel on Brounland Rd to the intersection with Emmons Rd. It turned right off of Brounland Rd. onto Emmons Rd. It continued on Emmons Rd. crossing over two sets of railroad tracks winding out a portion of roadway that was unlevel with multiple potholes. After two miles, the pursuit entered Boone County, WV.

APPENDIX D

22.   Metro Communications advised CPL Peterson that a WV State Police Trooper and Boone County Deputy Sheriff were both in the area to assist with the pursuit.

23.   The motorcycle continued to travel on Emmons Rd. and accelerated, almost stricking a Dachshund in the roadway.

24.   The motorcycle rounded a slightly elevated left-hand corner and failed to make the turn; it traveled up onto the Dartmont-Ashford railroad crossing. According to CPL Peterson, it struck the railroad tracks. The motorcycle spun as it hit the tracks, ejecting the motorcyclist off the seat, onto the railroad tracks, and into a ditch full of water. The motorcycle came to rest in the same ditch approximately ten to twelve feet away from the driver.

25.   CPL Peterson stopped his police SUV on the railroad tracks and Ptl Harvey right behind him. Both officers observed Mr. Means lying on his back in the water and approached him with their pistols drawn. They gave him commands to bring his hands out so they could see them. According to CPL Peterson, Mr. Means brought them out momentarily but then put them back in the water.

26.   The actions of these officers were observed and video recorded by Ms. Melissa Nunley, who was driving a yellow Jeep Wrangler and her passenger Ms. Mary Rich who was recording the officers.

27.   CPL Peterson attempted to control Mr. Means' hands and got his left hand without seeing through the muddy water. Ptl Harvey tried to get a hold of the right hand. CPL Peterson slipped backward in the water and lost his grip. He said neither of them could see Mr. Means' hands nor know what he was doing with them under the water.

28.   Ptl Harvey used his OC spray by shooting it into Mr. Means' face because he failed to make his hands visible. Mr. Means stated he thought he was drowning in the water, which CPL Peterson described as up to his knees.

29.   Ms. Nunley stated that she could see the stream of "mace" coming out of the canister for several seconds.

30.   Ms. Nunley testified that after Mr. Means was maced, the officers grabbed him by his wrists and drugged him across the railroad tracks.

31.   Ms. Nunley and Ms. Rich also observed one of the officers, later identified as Ptl Harvey, stomp on Mr. Means head. This occurred while CPL Peterson went back to his patrol vehicle to radio for Fire and EMS support. Ms. Rich captured this in her video recording.

32.   Ms. Nunley stated that after stomping on Mr. Means' head the officer rolled him over on his stomach and appeared to handcuff him behind his back.

33.   Mr. Means stated he could not feel his legs and still felt as if he was drowning and requested his helmet be removed. CPL Peterson told him that the OC was probably adding to

APPENDIX D

his issue and that they were not removing his helmet as it can help stabilize his neck/spine, and he had a clear airway as he was talking and breathing.

## Disputed Facts

Mr. William Means recounts details of the pursuit and his subsequent criminal charges on May 2, 2020.

1. Mr. Means testified that he never reached over 50 mph during the whole pursuit.[i]
2. Mr. Means stated that prior to the crash he had slowed to 15-20 mph before reaching the railroad tracks.[ii]
3. Prior to the accident Mr. Means did not hear any police siren or see any lights indicating he needed to pull over.[iii]
4. Mr. Means denies that there was any methamphetamine in his backpack or on his person.[iv]
5. Mr. Means stated that he was going over the railroad tracks when the patrol SUV struck his rear tire.[v]
6. Mr. Means testified that the impact caused him to lose control of the motorcycle and then everything went white.[vi]
7. Mr. Means testified that upon regaining consciousness he tried to roll over on his stomach to stand up, but the officers kicked him onto his back. One of the officers maced him and made statements they were going to leave him for dead.[vii]
8. Mr. Means stated that the officers then grabbed him by the arms and legs and jerked him across the tracks. Mr. Means said after that he could no longer feel his legs.[viii]
9. Mr. Means stated that he landed in the stagnant water alongside the railroad tracks. He said when he regained consciousness and tried to roll over, one of the officers "field goal" kicked him [Mr. Means] causing him to fall back into the water.[ix]
10. Mr. Means said he was kicking his feet and trying not to drown. He asked the officers to help him get out of the water. He stated they replied "we're going to leave you here to die.[x]
11. Mr. Means testified, the officers grabbed him by the arms and drug him across the tracks and that is the last thing he remembers until waking up 16 days later, paralyzed, in the hospital.[xi]
12. Officer David Harvey testified that he reached 60 mph, during the chase, according to his speedometer.[xii]
13. Officer David Harvey testified that while listening to the audio recording of the pursuit he did not hear a siren up to 5 minutes and 47 seconds.
14. Officer Harvey was shown the by-stander video. He was then asked about the portion at 1 minute and 31 seconds which appears to show him stomping on Mr. Means' head. Officer Harvey stated that he was stepping over Mr. Means head and the two witnesses were wrong.[xiii]
15. Officer Harvey testified that Mr. Means was driving unsafely and a danger to others for most of the 15 minute chase.[xiv]
16. Officer Eric Peterson testified that the last four (4) minutes of the pursuit was reckless.[xv]

---

[i] Deposition William Means Pg. 88 Lines 1-8

ii Deposition William Means Pg. 88 Lines 20-24
iii Deposition William Means Pg. 90 Lines 3-24
iv Deposition William Means Pg. 94 Lines 1-19
v Deposition William Means Pg. 95 Lines 10-24
vi Deposition William Means Pg. 97 Lines 12-24
vii Deposition William Means Pg. 98 Lines 1-24
viii Deposition William Means Pg. 99 Lines 1-7
ix Deposition William Means Pg. 99 Lines 8-24
x Deposition William Means Pg. 102 Lines 1-24
xi Deposition William Means Pg. 105 Line 2
xii Deposition David Harvey Pg. 72 Lines 15-21
xiii Deposition David Harvey Pg. 123 Lines 7-18
xiv Deposition David Harvey Pg. 143 Lines 13-23
xv Deposition E.M. Peterson Pg. 51 Lines 1-5

APPENDIX D