## REPORT OF DANIEL HUSTED, MD, FAAOS

**Case:** William Allen Means v E.M. Peterson, et al.
Civil Action No.2:20-cv-00561

**Name of Subject:** William Allen Means
**Date of Birth:** August 25,1989
**Date of Injury:** May 2, 2020
**Report Date:** May 17, 2021

**INTRODUCTION**:

My name is Daniel Husted, MD, FAAOS. I am licensed to practice medicine in the State of Florida and am a practicing spinal surgeon and general orthopaedist. I am also a Partner of South Florida Orthopaedics & Sports Medicine, and am Board Certified in Orthopaedic Surgery. I earned my medical degree from the University of Florida College of Medicine and completed my Surgical Internship and Orthopaedic Residency at Yale University in New Haven, Connecticut. I completed my Spine Surgery Fellowship at the San Francisco Spine Institute in California. I am actively engaged in practice and dedicate my concentration to patients with spine-related problems. My Curriculum Vitae and Fee Schedule are provided separately with this report.

I have been engaged to provide expert medical opinions in this matter. The nature, purpose and non-confidential aspects of this role are clear. I have been asked to review and provide expert opinions, provide a report, and may be called upon to testify about my findings. It is clear my involvement constitutes a review and expert testimony and, thus, a physician-patient relationship, including treatment, does not exist.

**REVIEW OF DATA:**

1. Boone County Ambulance Authority Records from 05/02/2020.
2. Medical Records from Charleston Area Medical Center.
3. Imaging and Films from Charleston Area Medical Center.
4. Video from scene of incident on 05/02/2020.
5. South Charleston Police Case Summary Report.
6. Deposition Transcript of Corporal E.M. Peterson and exhibits thereto.
7. Deposition Transcript of Officer Harvey and exhibits thereto.
8. Deposition Transcript of William Means and exhibits thereto.
9. Deposition Transcript of Mary Chandler and exhibits thereto.
10. Deposition Transcript of Melissa Nunley and exhibits thereto.
11. State of West Virginia Uniform Traffic Crash Report.
12. Complaint filed by Plaintiff.
13. Photos from Scene of Incident on 05/02/2020.

**BACKGROUND:**

On 05/02/2020, William Means was involved in a motorcycle crash resulting in his being thrown from his motorcycle and landing in a ditch near a set of railroad tracks. Initially, following the crash, Mr. Means reported the ability to feel his legs and feet as he lay in the ditch. However, he was then maneuvered, pepper sprayed, and subsequently moved from the ditch by two South Charleston Police Officers without any spinal immobilization and was improperly dragged by the officers by his wrists and clothing through steep terrain and over a set of railroad tracks. The manner of these actions and movement did not take into account the dangers of spinal injuries, despite the officers' training and knowledge. One of the South Charleston Officers, Officer Peterson, had previously been a licensed EMT.

Mr. Means was dragged from the ditch across a steep and rocky area and over railroad tracks. He was then placed on the ground and his body was rolled over by Officer Harvey, another action that is extremely concerning given the potential at that time of a spinal injury. Officer Harvey then appears to have stomped with his foot onto the head of Mr. Means according to a video and testimony provided causing further damage to the extremely vulnerable spinal cord. Mr. Means was then handcuffed behind his back moving his arms to accomplish this and he was placed in an upright sitting position by the officers despite again the obvious warning signs of a spinal injury.

After being dragged from the ditch, across the railroad tracks, rolled, stomped on the head, cuffed and maneuvered, Mr. Means then, for the first time, complained of an inability to feel, move, or have sensation in his legs and feet. He was transported from the scene by Boone County Ambulance Authority workers and taken to Charleston Area Medical Center (CAMC) General Hospital, where he was admitted. Upon admission he had a Glasgow score of 15, no motor or sensation from the waist distally, a midthoracic step off with an associated softball sized bony prominence, and no tone in his rectum.

Mr. Means' diagnoses were T11/T12 fracture/dislocation with paraplegia, minimal pneumomediastinum, bilateral pleural effusions, right and left rib fractures, and a fracture of a transverse process of lumbar vertebra. Neurosurgery was consulted. On 05/04/2020, William Means was operated on with a posterior spinal fusion of Tl0-L2 being performed. He is now T10 paraplegia complete.

**OPINION:**

Having reviewed the above, I have come to the following conclusions and opinions:

It is my opinion to a reasonable degree of medical certainty that South Charleston Police Officer Peterson and Police Officer Harvey caused the permanent paralysis of William Means. The initial crash of the motorcycle was likely the event that caused the initial fractures of Mr. Means vertebrae exposing the spinal cord within to potential damage and permanent trauma, though the dragging through steep terrain and over the railroad tracks by his wrists and clothing without spinal immobilization, along with the subsequent actions of the officers likely exacerbated any such fractures causing further damage to any initial fractured vertebrae. The initial fractures, however, are not likely to have caused the permanent paralysis as the irreversible spinal cord trauma likely came after this initial injury at the hands of the South

Charleston police officers.

In reviewing the documents above, including the testimony, reports, photographs and video, it is apparent that Mr. Means was initially neurologically intact after the crash as he lay in the ditch. He expressed that he could feel his legs and feet at that time. It was after he was moved from the ditch by the officers that his spinal cord was permanently damaged resulting in permanent paralysis.

Mr. Means was found lying on his back in a ditch in the immediate aftermath of a motorcycle crash and having obvious injury from this crash. Nevertheless, he was initially pepper sprayed and maneuvered in the ditch, then moved by these officers, in a completely unacceptable manner, by gripping his wrists and clothing, and failing to utilize any proper spinal immobilization whatsoever. No backboard, straps, cervical collar, or any other manners of spinal immobilization were used by Officers Peterson or Harvey to move Mr. Means.

The actions of Officer Harvey in an apparent stomp of Mr. Means head as he lay on the ground after having been dragged and rolled likely caused further and extreme damage to the spinal cord that was irreversible. Mr. Means was then handcuffed behind his back and apparently placed in an upright sitting position by the officer or officers resulting in additional and permanent damage to the spinal cord.

After Mr. Means had been dragged from the ditch, across the railroad tracks, rolled, manipulated, stomped on the head, and handcuffed, he then, for the first time, complained of neurological deficits, in that he could no longer feel his legs or feet or have sensation in the same. This indicates the damage to the spinal cord itself was caused directly by the police officers unwarranted actions. Upon arrival at Charleston Area Medical Center Mr. Means was found to have been rendered paraplegic.

It is my opinion, to a reasonable degree of medical certainty, that the actions of Corporal Peterson and Officer Harvey of the South Charleston, West Virginia Police Department were the direct and proximate cause of the injuries, damages, and costs suffered by Mr. William Means and his spinal cord injury resulting in permanent paralysis.

**CONCLUSION:**

I make all of the above statements to a reasonable degree of medical certainty based upon my knowledge, training, experience and education. I further reserve the right to amend this report and these findings in the event additional information is discovered.

Daniel S. Husted, M.D., FAAOS

11